Clifford CRUZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–92–257 CR.

Court of Appeals of Texas,
Beaumont.

Submitted Jan. 6, 1994.

Decided June 8, 1994.

Discretionary Review Refused
Aug. 17, 1994.

James A. DeLee, Port Arthur, for appellant.

Tom Maness, Dist. Atty. and Rodney D. Conerly, Asst. Dist. Atty., Beaumont, for the State.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Murder. Following its "guilty" verdict, the jury assessed appellant's punishment at life in the Institutional Division of the Texas Department of Criminal Justice. Appellant raises five points of error on appeal, *viz:*

> Point of Error 1: The trial court erred by impairing the presumption of innocence during jury *voir dire.*

Point of Error 2: It was error for the State's attorney and the Court to inject injurious and prejudicial matters before the jury panel during *voir dire* examination.

Point of Error 3: The trial court erred in allowing prejudicial jury argument by the prosecution in commenting upon the Court's reason for allowing evidence.

Point of Error 4: The trial court erred in allowing prejudicial, manifestly improper and harmful jury argument by the prosecution.

Point of Error 5: The evidence was insufficient to sustain the jury's verdict of guilty.

■ We begin with point of error five and a rendition of the evidence before the jury in the light most favorable to the verdict. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim.App.1990), *cert. denied*, 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). In the early morning hours of February 17, 1992, the victim, Wilfred "Butch" Thibodeaux, was found dead in his apartment. The victim was found naked on the floor next to his bed. He had been stabbed in the neck and had bled to death. The victim's face also appeared to have been carved upon in a manner described as "torture" by one of the police witnesses. Numerous "defensive" wounds were also present on the victim's hands and arms. Blood was present on the bedclothing and mattress of the victim's bed. An examination of the mirrored headboard of the bed turned up five latent fingerprints. Said fingerprints were not "bloody" and ranged in age from a few hours old to several months old. The fingerprints were identified as the right thumb-print of appellant.

The police also located a brown jacket with bloodstains on the collar and both sleeves. The jacket was found on a pile of trash at a residence directly behind the victim's apartment. Testimony from a police witness stated that an alleyway ran directly from the victim's apartment to the spot where the jacket was located. Inside the pocket of the jacket was an "aerosol inhalant" that was of the same type as that found in the victim's

apartment. State's witness Terrance Iles testified that appellant was a long-time friend of his. Iles further testified that on the day after the murder was discovered, he chanced to encounter appellant at a local pizza parlor. Iles stated that appellant related that the police were trying to "put a murder" on appellant. Iles had read in the newspaper that a bloody jacket was found by the police and asked appellant if the jacket belonged to him. Appellant replied that it did.

The State also called Mary Elizabeth "Liz" Cruz to the witness stand. Liz Cruz is the sister of appellant. She testified that after numerous denials of involvement in the murder of Butch Thibodeaux, appellant told Liz, in the presence of appellant's girlfriend, Terry Pearson,[1] that he (appellant) was there when the murder happened, and that the victim's killing was related to the fact that the victim had the AIDS virus.

Perhaps the most damaging testimony from appellant's standpoint came from another long-time family friend, Deborah Kay Harrington. Ms. Harrington stated that, in a telephone conversation she had with appellant, he admitted to having killed Butch Thibodeaux by stabbing him. Appellant also related to Ms. Harrington that he killed the victim because appellant "had been smoking rocks and found out that Butch was supposed to be HIV positive." Ms. Harrington also testified that appellant mentioned that he got blood on his jacket and had therefore gotten rid of the jacket. Ms. Harrington further testified that appellant was known to carry a knife.

A written statement made by appellant to an investigator in the district attorney's office was later introduced by the State. Although its overall nature was exculpatory with regard to involvement in the murder, appellant freely admitted that he had known the victim for twelve or thirteen years and that he and the victim had a sexual relationship.

Appellant presented a case in his defense consisting of testimony from his mother, an-

---

1. The record reflects that appellant and Ms. Pearson lived together and were considered "boyfriend and girlfriend." Nevertheless, Ms.

Pearson did not testify at trial. Indeed, the record reflects that at the time of the trial, Ms. Pearson's whereabouts were unknown.

other sister, Cynthia Cruz, a sister-in-law, Serena Kay Cruz, and appellant's younger brother, Robert Wayne Cruz. Their testimony consisted of the fact that appellant always asserted his non-involvement in the murder; of the non-believability of some of the State's lay witnesses; of the fact (by appellant's mother) that appellant never admitted to Iles anything concerning the jacket; that appellant did not own and would not wear a jacket such as the one in question; that the incriminating telephone conversation between Ms. Harrington and appellant did not take place (by Cynthia Cruz); and, through the testimony of Robert Cruz, that appellant was provided with an alibi. Appellant did not testify in the guilt/innocence phase of the trial.

■ As is the rule in Texas in all cases where the sufficiency of the evidence to sustain a conviction is called into question because of conflicting or contradictory testimony, the jury is the *exclusive* judge of the facts proven, the credibility of the witnesses, and the weight to be given to their testimony. *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986), *cert. denied,* 488 U.S. 872, 109 S.Ct. 190, 102 L.Ed.2d 159 (1988); TEX.CODE CRIM.PROC.ANN. art. 38.04 (Vernon 1979). Indeed, the law fully provides that a jury may believe a witness even though the witness's testimony has been contradicted; and that a jury may accept any part of a witness's testimony and reject the rest. *Sharp,* 707 S.W.2d at 614; *Jackson v. State,* 505 S.W.2d 916 (Tex.Crim.App.1974). The following language taken from *Moreno v. State,* 755 S.W.2d 866, 867 (Tex.Crim.App. 1988), quoted often by this court when analyzing similar points of error, provides the current standard for appellate courts to abide by:

> The court is never to make its own myopic determination of guilt from reading the cold record. It is not the reviewing court's duty to disregard, realign or weigh evidence. This the factfinder has already done. The factfinder, best positioned to consider all the evidence firsthand, viewing the valuable and significant demeanor and expression of the witnesses, has reached a verdict beyond a reasonable doubt. Such a verdict must stand unless it is found to

be irrational or unsupported by ... the evidence, with such evidence being viewed under the *Jackson* light. Concrete application of the *Jackson* standard is made by resolving inconsistencies in the testimony in favor of the verdict. (footnote omitted)

■ The "*Jackson* standard" is, of course, taken from *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires appellate courts to review all of the evidence in the light most favorable to the verdict and then determine if any rational trier of fact could have found each of the essential elements of the offense proven beyond a reasonable doubt. The *Jackson* case provides further illumination in the following language:

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. (emphasis in original)

*Id.,* 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573.

In the instant case, the simple response to appellant's contentions under this point of error is that the jury chose to believe the State's witnesses and not those of appellant. The fact that appellant's complicity in the murder was provided to a great extent by State's witnesses Harrington and Iles as to what appellant *told* them is cloaked with sufficient legal probity to support the conviction. Statements which a defendant makes to third parties regarding said defendant's involvement in a murder are admissible in the subsequent murder prosecution as admissions against interest and admissions by party opponent. *See Mathes v. State,* 765 S.W.2d 853, 856 (Tex.App.—Beaumont 1989, pet. ref'd); TEX.R.CRIM.EVID. 801(e)(2)(A). As such, direct evidence was placed in evidence before the jury of appellant's culpability in the murder. Therefore, we find that any rational trier of fact could have found all

of the essential elements of the offense proven beyond a reasonable doubt. Point of error five is overruled.

■ Points of error one and two focus on the following portion of appellant's voir dire examination of the venire:

(COUNSEL FOR APPELLANT) When you walked in, you knew you were coming to a criminal court. As you sat down and you looked at that man right there, I will bet you that you said to yourself, I wonder what he has done. If you did this, you violated his right to the presumption of innocence. Because right now you are not presuming him innocent or you didn't then. And I am sure you are going to think about it, at least I hope that you are able to wipe that out of your minds and say, well, this man is innocent, and unless enough evidence to prove otherwise beyond a reasonable doubt is presented, then he will remain innocent.

(PROSECUTOR) Your Honor, at this time I am going to object to his characterization as Mr. Cruz being innocent in fact.

THE COURT: Sustain the objection.

(PROSECUTOR) Thank you, Your Honor.

THE COURT: Rephrase it, counsellor.

(COUNSEL FOR APPELLANT) Mr. Cruz is presumed innocent, Your Honor. I don't know of any other way to rephrase it unless they prove otherwise.

THE COURT: Go ahead. Just make sure it is a presumption and not in fact.

As authority for points of error one and two, appellant's brief claims to rely on "State and Federal Constitutions," but only cites the Fourteenth Amendment of the United States' Constitution. Appellant also cites Texas statutory law and directs us to "[s]ee also *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) and *Randle v. State,* 826 S.W.2d 943 (Tex.Crim.App.1992)" for the general legal principle of an accused's right to avail himself/herself of the presumption of innocence. In arguing points of error one and two, however, appellant makes no attempt to separately address and annotate State and Federal constitutional issues. We therefore decline to address them. Further-

more, under the argument portion of appellant's brief on pages 5 and 6, appellant provides absolutely no authority in support of the specific contention that by sustaining the State's objection, the trial court "placed prejudicial stain upon the white mantle of innocence that could not be removed." As such, we find that points of error one and two have been improperly briefed and decline to address any issues raised therein. *Vuong v. State,* 830 S.W.2d 929, 940 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992); Tex.R.App.P. 74(f). Points of error one and two are overruled.

■ With regard to appellant's third point of error, our attention appears to be directed at the following exchange that took place during the State's closing arguments during the guilt/innocence portion of the trial:

(PROSECUTOR) First of all, ladies and gentlemen, I'd like to say that Mr. DeLee has done a very skilled job in taking something that Mr. Thompson has said about not considering hearsay and talked 30 minutes about it. The very reason that Mr. Thompson said don't consider hearsay is contrary to what Mr. DeLee was trying to make you believe. There are some hearsay statements that are very probing, very—they prove a whole lot. And the reason the judge allowed you to hear that testimony is because—

(COUNSEL FOR APPELLANT) I object to counsel making any reference to why or why not the Court did anything.

THE COURT: Overruled. Let's hear what he says, and then I'll entertain the objection.

The record reflects that appellant's trial counsel made no further objection following the State's completion of the sentence, nor any further objection to this particular area of argument by the State. To preserve error for review, a defendant must receive an adverse ruling on his objection. Tex.R.App.P. 52(a). The ruling must be conclusory; that is, it must be clear from the record the trial judge in fact overruled the defendant's objection or otherwise error is waived. *Ramirez v. State,* 815 S.W.2d 636, 643 (Tex.Crim.App.

1991). In the instant case, it is clear from the context of the ruling that the trial court had not made a final ruling on appellant's objection. It further appears that the State was merely providing a proper rejoinder to argument from appellant's trial counsel. *See Harris v. State*, 784 S.W.2d 5 (Tex.Crim.App. 1989), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990). At any rate, we find error, if any, was waived. Point of error three is overruled.

■ Appellant's fourth point of error directs our attention to the following portion of the State's closing argument during the punishment phase of the trial:

> (PROSECUTOR) The range of punishment for this crime is from five years to 99 years or life in the penitentiary. The death sentence is not available in this case.

> (COUNSEL FOR APPELLANT) Objection, Your Honor. Counsel is in improper argument now.

> THE COURT: Overruled.

■ Proper jury argument falls into four well-defined categories of discussion: (1) a summation of the evidence; (2) reasonable deductions from the evidence admitted for consideration by the jury; (3) a rejoinder to argument by opposing counsel; and (4) a plea for law enforcement. *Harris*, 784 S.W.2d at 12. Appellant sums up his argument under this point of error as follows:

> If it is improper or wrong to discuss parole eligibility mechanics, and if it is wrong to discuss the number of years or length of time a particular person might serve on a sentence before a jury during punishment phase, then it is certainly manifestly improper to tell the jury it cannot consider the death penalty when there is nothing in the charge to support same; nor is it a proper statement of punishment alternatives.

■ In the instant case, the jury could only assess the range of punishment provided by law. Even if improper argument is made, such error is not reversible, unless viewing the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts, harmful to the accused, into the trial. *Felder v. State*, 848 S.W.2d 85, 95 (Tex.Crim.App. 1992), *cert. denied*, —— U.S. ——, 114 S.Ct. 95, 126 L.Ed.2d 62 (1993). We find the State's comment was neither extreme nor manifestly improper. Furthermore, the record reflects that at the beginning of its voir dire examination of the jury, the State made the following comment: "Clifford Cruz is charged with the crime of murder. The only thing that is worse in terms of range of punishment and seriousness of crime is capital murder. That is not a range of punishment in this case." There was no objection from appellant. Where the same evidence or argument is presented elsewhere during trial without objection, no reversible error exists. *McFarland v. State*, 845 S.W.2d 824, 840 (Tex.Crim.App.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). Finding no merit in appellant's fourth point of error, it is overruled. The judgment and the sentence of the trial court are affirmed.

AFFIRMED.

BURGESS, Justice, concurring.

I concur in the result. I write only to comment on points of error one and two. The majority declines to address the points. I believe they should be addressed as this court previously did in *Kyles v. State*, 747 S.W.2d 64 (Tex.App.—Beaumont 1988, no pet.), when we held a similar exchange was harmless error. Chief Justice Dies characterized the comment in Kyles as a "loose remark", *Id.* at 65. Here, the state voiced an objection, it was not a "loose remark". The state and the court should have been aware of our previous holding that it was error to engage in the "presumption of innocence versus innocent in fact" debate, yet the state made the objection and the court sustained it. I am unwilling to find harm in this case, therefore, the harmless error analysis of *Kyles* is appropriate. I certainly reserve the right to engage in a future harm analysis if

the state [1] continues to engage in the debate in the future.

**1.** Both this case and the *Kyles* case involve the same prosecutor's office.