NUMBERS 13-06-376-CR


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


RICARDO GARCIA PERALEZ, Appellant,


v.


THE STATE OF TEXAS, Appellee.

 
 

On appeal from the 389th District Court of Hidalgo County, Texas

 


MEMORANDUM OPINION


Before Justices Yañez, Rodriguez, and Garza


Memorandum Opinion by Justice Garza


 Appellant, Ricardo Garcia Peralez, was indicted for the offenses of sexual assault
of a child (count 1), burglary of a habitation with intent to commit sexual assault of a child,
(count 2), indecency with a child by contact (count 3), and indecency with a child by
exposure (count 4). Peralez pleaded not guilty. A jury found Peralez guilty on counts 1, 3,
and 4. The jury sentenced him to 35 years' imprisonment for count 1, 35 years'
imprisonment for count 3, and 20 years' imprisonment for count 4. The jury also assessed
a $10,000 fine for each count. The judge ordered the sentences to run concurrently. By
three issues, Peralez challenges his convictions, contending: (1) the trial court erred by
admitting evidence of his oral statement to an investigator, (2) the prosecution engaged in
improper voir dire by broaching the subject of enhancements and their range of punishment,
and (3) the convictions violated the constitutional prohibition against double jeopardy and
the statutory prohibition against multiple punishments for the same offense. We affirm.

I. Factual Background

 Fifteen-year-old T.P. testified that on the evening of December 11, 2005, she and
her thirteen-year-old sister, B.D., were sleeping in the bed they shared at their home. T.P.
woke up when she heard knocking at the bedroom window. She got up to look out and saw
Peralez. T.P. recognized Peralez because she had seen him at her neighbor's house
before. They had never spoken. Peralez opened the window and climbed in. He began
to kiss T.P. T.P. told him to stop, but he did not. Peralez grabbed T.P.'s breast and
buttocks. T.P. again asked him to stop, but he refused. 

 Peralez tried to touch T.P.'s vagina, but T.P. tried to stop him by crossing her legs. 
T.P. then opened her legs, and Peralez "put his waist between [T.P.'s] legs." He ripped her
underwear, took out his penis and sexually penetrated T.P.'s vagina. T.P. again told him
to stop.

 B.D. began to wake up. Peralez then got behind T.P. and asked if her sister "would
do a threesome." Peralez then tried to insert his penis in T.P.'s anus. T.P. pushed Peralez
and he fell on the floor. B.D. woke up and Peralez left through the window. T.P. claimed
she never screamed because she thought Peralez was armed.

 B.D. testified that she was awakened that night by "weird noises" like hard breathing
and by the bed moving. B.D. saw somebody on top of T.P. She observed a man stand up,
pick his pants up, open the window, and then jump out. The man had light bright shoes and
a yellow and black "Killer Bees" jacket. When he turned, B.D. saw his face and recognized
Peralez. She had seen Peralez before at her neighbor's home. B.D. told her mother and
they both ran outside and saw Peralez drive off in a gray Taurus. Maria Pineda, T.P. and
B.D.'s mother, testified she saw Peralez drive off in a newer model gray Taurus. 

 Sexual assault nurse examiner, Lori Guerrero, examined T.P. that same day. She
testified that T.P. reported the assault occurred between 4:00 and 5:00 a.m. Guerrero
observed redness all around T.P.'s labia major. The redness indicated the use of some
force. She also observed a small notch on T.P.'s hymen that could have been caused by
force and could have occurred four hours before the exam. Guerrero also indicated a 1.5
inch superficial tear, like an abrasion or deep scratch on the hymen. Guerrero claimed the
tear was not more than eight hours old. Guerrero also observed red marks on T.P.'s anus
that were consistent with attempted anal penetration. 

 Lori Laurel, Peralez's girlfriend, testified that Peralez left that evening in her 2004
silver-green Ford Taurus. He returned at about 3:00 a.m., then left again at about 4:00 a.m. 
Peralez was carrying his yellow and black jacket and tan shoes. He returned at about 7:00
a.m. 

 Peralez was subsequently charged and convicted and sentenced by a jury. This
appeal ensued. 


II. Admissibility of Peralez's Oral Statement

 By his first issue, Peralez argues that the trial court erred in admitting into evidence
an oral statement that he made to Investigator Leonor Garcia. Peralez contends his oral
statement, which was not recorded, was inadmissible pursuant to article 38.22, section
3(a)(1) of the Texas Code of Criminal Procedure, which provides that an oral statement of
an accused made as a result of "custodial interrogation" is not admissible against the
accused unless an electronic recording is made of the statement. See Tex. Code Crim.
Proc. Ann. art. 38.22, § 3(a)(1) (Vernon 2005). 

A. Standard of Review 

 A trial court's ruling on a motion to suppress is generally reviewed for abuse of
discretion. See Ford v. State, 26 S.W.3d 669, 672 (Tex. App.-Corpus Christi 2000, no pet.)
(citing Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999)). Where, as here, a trial
judge does not enter findings of fact, a reviewing court must "view the evidence in the light
most favorable to the trial court's ruling and assume that the trial court made implicit findings
of fact that support its ruling as long as those findings are supported by the record. Wiede
v. State, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (citing State v. Ross, 32 S.W.3d 853,
855 (Tex. Crim. App. 2000)); Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App.
2000). 

 In reviewing a trial court's ruling on a motion to suppress evidence, we apply a
bifurcated standard of review giving almost total deference to a trial court's determination
of historic facts and reviewing de novo the court's application of the law to the facts. See
Carmouche, 10 S.W.3d at 327. This Court affords the same amount of deference to the
trial court's ruling on application of law to fact questions, also known as mixed questions of
law and fact, if the resolution of those ultimate questions turns on evaluating credibility and
demeanor. Ross, 32 S.W.3d 853 at 856; Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App. 1977); Villarreal v. State, 61 S.W.3d 673, 678 (Tex. App.-Corpus Christi 2001, pet.
ref'd). However, questions of law and mixed questions of law and fact that do not turn on
an evaluation of credibility and demeanor are reviewed de novo. Ross, 32 S.W.3d at 856;
Guzman, 955 S.W.2d at 89; Villarreal, 61 S.W.3d at 678. The issue before us presents a
mixed question of law and fact that does not turn on evaluation of the credibility of
witnesses; we therefore review this issue de novo. Maestas v. State, 987 S.W.2d 59, 62
(Tex. Crim. App. 1999); Guzman, 955 S.W.2d at 89.

B. Applicable Law

 Article 38.22, section 3(a)(1) states that no oral statement of an accused made as
a result of "custodial interrogation" shall be admissible unless an electronic recording is
made of the statement after the accused has been properly warned and has waived his
rights. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(1); see Miranda v. Arizona, 384 U.S.
436, 467 (1965) (holding that statements stemming from custodial interrogation may not be
used unless procedural safeguards effective to secure the privilege against self-incrimination are employed). However, article 38.22, section 5 specifically exempts
statements that do not "stem from custodial interrogation," statements that are "res gestae
of the arrest or of the offense," and all voluntary statements, whether or not they result from
custodial interrogation. Id. § 5.

 In Miranda v. Arizona, the United States Supreme Court defined custodial
interrogation as "questioning initiated by law enforcement officers after a person has been
taken into custody or otherwise deprived of his freedom of action in any significant way." 
Miranda, 384 U.S. 436, 444 (1966). The Court in Miranda further notes:

Any statement given freely and voluntarily without any compelling influences
is, of course, admissible in evidence. The fundamental import of the
privilege while an individual is in custody is not whether he is allowed to talk
to the police without the benefit of warnings and counsel, but whether he can
be interrogated . . . . Volunteered statements of any kind are not barred by
the Fifth Amendment and their admissibility is not affected by our holding
today.


Id. at 478. Thus, the procedural safeguards established in Miranda are not required if a
suspect is simply taken into custody, but rather where a suspect in custody is subjected to
interrogation. R.I. v. Innis, 446 U.S. 291, 300 (1980). Interrogation must reflect a measure
of compulsion above and beyond that inherent in custody itself. Id. The Innis court
additionally notes:

[T]he term "interrogation" under Miranda refers not only to express
questioning, but also to any words or actions on the part of the police (other
than those normally attendant to arrest and custody) that the police should
know are reasonably likely to elicit an incriminating response from the
suspect.


Id. at 300-01. When a suspect in custody spontaneously volunteers information that is not
in response to interrogation by officers, the statement is admissible even though not
recorded because it is not the product of custodial interrogation. Id. at 302; Stevens v.
State, 671 S.W.2d 517, 520 (Tex. Crim. App. 1984). 

C. Analysis

 Peralez argues that his statement was a product of interrogation while in custody and
is therefore inadmissible because it was not recorded. The State concedes that Peralez
was in custody at the time of his oral statement, however, the State argues that Peralez's
statement was not the product of custodial "interrogation." Accordingly, the decisive
question is whether Peralez's oral confession was the result of custodial interrogation. If
Peralez's statement did not stem from custodial interrogation, neither Miranda nor article
38.22 requires its suppression. See Tex. Code Crim. Proc. Ann. art. 38.22, § 5; Miranda,
384 U.S. at 478.

 The record reflects that Garcia spoke to Peralez at the county jail after his arrest. 
Garcia advised Peralez of his rights and Peralez signed a paper indicating that he
understood those rights. Garcia testified that Peralez was then asked to give a statement,
and refused. Garcia stopped questioning Peralez and began to gather up the paperwork. 
As Garcia collected the paperwork, Peralez remarked, "Anyway, she's eighteen." A pretrial
motion to suppress this statement was filed by Peralez. The judge conducted a hearing
with Garcia outside the presence of the jury and denied the motion and Garcia was allowed
to convey Peralez's statement to the jury. 

 At the hearing on the motion to suppress, Garcia testified that after Peralez refused
to provide a statement, the conversation ended and the interrogation was over. At that
point, Garcia testified that she began to gather up Peralez's paperwork. Recognizing that,
in addition to express questioning, "interrogation" may refer to other words or actions by
police that they should know are likely to elicit an incriminating response from the suspect,
we address Garcia's actions to determine they were reasonably likely to elicit an
incriminating response from Peralez. Innis, 446 U.S. at 300.

 There is no evidence in the record demonstrating that Peralez's statement was
invited in response to interrogation. See id. at 300-02; Stevens, 671 S.W.2d at 520. 
Further, there is nothing in the record to suggest that Garcia's actions were orchestrated to
elicit the response from Peralez. In fact, the record indicates that Garcia's actions were
nothing more than inquiring whether Peralez wished to provide a statement and then
gathering up paperwork upon Peralez's refusal. Neither Garcia's words or actions are
indicative of anything other than those "normally attendant to arrest and custody." Innis,
446 U.S. at 300-01. 

 Without such compulsion, direct or indirect, Peralez's statement did not arise from
custodial interrogation. The trial court's ruling that Peralez's confession was not the result
of custodial interrogation is supported by the record. Thus, there was no requirement that
the statement be electronically recorded. Accordingly, the trial court did not abuse its
discretion in admitting the complained-of evidence. Peralez's first issue is overruled.

III. Voir Dire

 Peralez next argues that the State's improper voir dire deprived him of his Sixth
Amendment right to a jury determination of his guilt or innocence, and his right to a fair trial. 
Peralez additionally contends that the voir dire jeopardized his presumption of innocence. 
The State claims Peralez failed to preserve this issue for review. We agree. 

 To preserve a complaint for appellate review, a party must present to the trial court
a timely request, objection, or motion stating the specific grounds for the ruling desired. 
Tex. R. App. P. 33.1(a). It is well established that almost every right, constitutional or
statutory, may be waived by failing to object. Smith v. State, 721 S.W.2d 844, 855 (Tex.
Crim. App. 1986). 

 During voir dire, the State informed the venire that "hypothetically speaking, if the
state were to provide evidence that a person had been convicted before, the punishment
could be increased. On the first degree charge, normally facing 5 to 99 or life, he faces 15
to 99 or life." When the State made this statement, no objection was made by Peralez. 

 When an appellant complains about an improper remark by the prosecutor during
voir dire, the appellant must object when the remark is made. Espinosa v. State, 194
S.W.3d 703, 708 (Tex. App.-Houston [14th Dist.] 2006, no pet.) (citing Beltran v. State, 99
S.W.3d 807, 811 (Tex. App.-Houston [14th Dist.] 2003, pet. ref'd) (overruling issue about
trial court's improper comments because appellant failed to preserve error by objecting
when the court made the comments); Cruz v. State, 877 S.W.2d 863, 868 (Tex.
App.-Beaumont 1994, pet. ref'd) (holding the defendant waived the issue on appeal of
improper argument during closing argument because he did not object during voir dire when
the prosecutor first made comments about the difference in punishment between the
charged crime of murder and capital murder)). Accordingly, we hold Peralez failed to
preserve the issue for review because he did not object when the State made the remark
to the jury during voir dire. See id.; see also Tex. R. App. P. 33.1. Peralez's second issue
is thus overruled. 

IV. Double Jeopardy and Prohibition of 

Multiple Punishments for the Same Offense


 In his third issue, Peralez argues that the convictions for sexual assault of a child,
indecency with a child by contact, and indecency with a child by exposure, violate the
constitutional prohibition against double jeopardy and the statutory prohibition against
multiple punishments for the same offense.

A. Constitutional Double Jeopardy Claim

 We note that although Peralez cites to Blockburger v. United States, 284 U.S. 299
(1932), he wholly failed to apply the Blockburger analysis to the facts of his case and has
failed to develop any argument regarding how his convictions violate the Double Jeopardy
Clause pursuant to Blockburger. Accordingly, we will not address this contention. See Tex.
R. App. P. 38.1(h). (1) 

 We additionally note that even if Peralez had properly briefed his constitutional
double jeopardy violation claim, we would nonetheless conclude that he failed to preserve
the issue for review. Generally, to preserve a double jeopardy claim, a defendant must
object at or before the time the charge is submitted to the jury. Gonzales v. State, 8 S.W.3d
640, 642 (Tex. Crim. App. 2000). Peralez did not raise any double jeopardy objections at
trial. See id.; Tex. R. App. P. 33.1(a)(1). 

 However, an appellant is excused from the preservation requirement when (1) the
undisputed facts show the double jeopardy violation is clearly apparent on the face of the
record and (2) enforcement of rules of procedural default serves no legitimate state
interests. Gonzales v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). Peralez, however,
has not contended nor demonstrated that the alleged double jeopardy violation is clear on
the face of the record, nor has he claimed that enforcement of procedural defaults serves
no legitimate state interests. See id. And, a double jeopardy violation is not clearly
apparent on the face of the record. See id. Accordingly, we would nonetheless conclude
he failed to preserve his constitutional double jeopardy claim for review. 

B. Statutory Multiple Punishment Claim

 Although Peralez asserts that his convictions violate statutory prohibitions, he does
not specify which statute has been violated. Peralez does, however, cite to Patterson v.
State to support his contention. See Patterson v. State, 152 S.W.3d 88,89 (Tex. Crim. App.
2005) (en banc). In Patterson, the defendant was convicted of aggravated sexual assault
of a child by penetration, aggravated sexual assault of a child by contact, attempted
indecency with a child by contact, indecency with a child by contact, and indecency with a
child by exposure. Id. In Patterson, the court of criminal appeals did not address any
constitutional double jeopardy issue; instead, it resolved the issues before it on the basis
of statutory construction pursuant to Texas Penal Code section 3.03. See id. at 90-92.

 Peralez did not object in the trial court on section 3.03 or Patterson grounds. 
Accordingly, he failed to preserve his complaint for appellate review. Donnell v. State, 191
S.W.3d 864, 869 (Tex. App.-Waco 2006, no pet.); Cabral v. State, 170 S.W.3d 761, 763-64
(Tex. App.-Forth Worth 2005, pet. ref'd); see Tex. R. App. P. 33.1(a)(1). (2) 

 Accordingly, we overrule Peralez's third issue. 

IV. Conclusion

 The judgment of the trial court is affirmed.


 _________________________

 DORI CONTRERAS GARZA,

 Justice


Do not publish. 

Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and 

filed this the 9th day of August, 2007.
1. Appellant has, however, focused his entire discussion on his statutory violation claim, relying almost entirely
on a factual and procedural recitation of the Texas Court of Criminal Appeals' opinion in Patterson v. State,
152 S.W.3d 88 (Tex. Crim. App. 2005). Accordingly, our analysis is limited to appellant's argument as it
relates to the alleged statutory violation. 
2. Even if Peralez had objected on these grounds, we would find the complaint without merit. Section 3.03
provides that multiple offenses arising from the same criminal episode and tried in a single criminal action
shall, in general, be punished with concurrent sentences, but also provides that there should be two
exceptions to this general rule: intoxication manslaughter, and sexual offenses committed against children. 
See Tex. Pen. Code Ann. § 3.03 (Vernon Supp. 2006). For those offenses, section 3.03 permits consecutive
sentences. In the present case, Peralez's sentences were set to run concurrently, and he is not complaining
about the trial court's decision to do so. Accordingly, this provides another basis for overruling appellant's third
issue.