**Jose Federico Reyes VILLARREAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 13–00–283–CR.

Court of Appeals of Texas, Corpus Christi.

Nov. 1, 2001.

---

Mark Alexander, McAllen, for Appellant.

Theodore C. Hake, Asst. Criminal District Attorney, Edinburg, for Appellee.

Before Chief Justice VALDEZ and Justices YAÑEZ and CASTILLO.

## OPINION

Opinion by Chief Justice ROGELIO VALDEZ.

This is an appeal by Jose Federico Reyes Villarreal ("Villarreal") challenging his conviction for murder, after a jury found him guilty and sentenced him to serve a term of thirty years. We overrule all issues and affirm the trial court's judgment.

## STATEMENT OF FACTS

Appellant Villarreal, Isaias Mateo Reyes ("Isaias"), and the now deceased Jorge Reyes ("Reyes") were friends who came from Mexico to work in the United States. All three found work at a body shop, and resided behind the shop. In the early morning of August 10, 1998, after Villarreal and Reyes got into a fight, Villarreal killed Reyes.

The fight took place outside, behind the garage where the three men worked. During the fight, Reyes attempted to run away as Villarreal pursued. Villarreal then grabbed a bottle and hit Reyes in the face with it, rendering Reyes unconscious. Villarreal then dragged Reyes under a tree, where he cut Reyes's throat with the jagged edge of the broken bottle's neck. Villarreal then went back to the garage and returned with a screwdriver, which he used to stab Reyes in the chest six or seven times. Finally, Villarreal took a cement cinder block and smashed Reyes in the face several times, eventually crushing his skull. Villarreal then put Reyes in the trunk of a Ford Taurus and dumped Reyes's body on the side of a road.

Subsequently, the police discovered the body with a note containing the phone number of the garage where Villarreal worked. Officer Jose Beltran testified that the police continued the investigation at the garage, where they questioned Villarreal and Isaias. Beltran said Villarreal and Isaias were shown a photograph of Reyes; both denied knowing Reyes. Beltran testified that in response to his request for identification, Villarreal and Isaias were unable to provide identification and stated they were in the country illegally. Shortly thereafter, two other individuals came by the garage and were also questioned by the police. According to Beltran, all of the individuals were then "detained due to the fact that all four of them had advised that they were in the United States illegally."[1] The four were taken to the police station. Thereafter, the police contacted the owner of the garage and obtained consent to search the premises. The officers subsequently discovered the crime scene behind the garage and recovered Reyes's missing boot, the screwdriver, the broken bottle, and a bloody T-shirt.

The evidence recovered made Villarreal and Isaias suspects, upon which they were read their *Miranda*[2] warnings and subsequently questioned at the police station. Villarreal was informed of his rights twice by officers prior to having both his written and oral statements taken. Based, in part, on these statements, the police recovered additional evidence including the cement cinder block, Villarreal's bloody shoes, and carpet from the trunk of the Ford Taurus.

Villarreal was placed under arrest, and taken before a magistrate for arraignment. During the arraignment while the judge was informing Villarreal of his rights, Villarreal stated he had killed Reyes, and Isaias had only assisted him in placing the body in the truck. At the trial, after hearing all the evidence, the jury found Villarreal guilty of murder and sentenced him to the Institutional Division of the Texas Department of Criminal Justice for a term of thirty years.

## ANALYSIS

Villarreal challenges the trial court's judgment in three issues. In issue one, Villarreal asserts the trial court erred in admitting his oral statement taken by the officers. In his second issue, Villarreal contends the court erred in admitting Villarreal's oral statement taken at his arraignment. Last, in issue three, Villarreal asserts the trial court erred in denying his requested jury charge.

### Issue One

In his first issue, Villarreal asserts the trial court erred in denying his motion to suppress his oral statement taken by the police. First, Villarreal contends he was not given a proper *Miranda*

1. We note that one's illegal *presence* in the country (as opposed to illegal *entry*) is insufficient, without more, to constitute a criminal offense enforceable by state or local authorities. Although local police officers are not precluded from enforcement of *criminal* provisions of federal immigration laws, such authorization does not extend to illegal presence, which constitutes a civil violation. *See Mountain High Knitting, Inc. v. Reno,* 51 F.3d 216, 218 (9th Cir.1995) ("Although the lack of documentation or other admission of illegal presence may be some indication of illegal entry, it does not, without more, provide probable cause of the criminal violation of illegal entry.")(quoting *Gonzales v. Peoria,* 722 F.2d 468, 476–77 (9th Cir.1983)). However, in the case before us, appellant did not challenge the admissibility of the evidence on grounds that it was obtained pursuant to an illegal detention. Accordingly, we do not address that issue.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

warning because the warning did not follow the language of article 38.22 of the code of criminal procedure, and the officer that took Villarreal's statement was not the same officer that gave Villarreal his warnings. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 2(b) (Vernon Supp.2001). Additionally, Villarreal contends he was not given a consulate warning. Last, Villarreal asserts the evidence recovered based on his oral statements was not sufficient to conduce to establish his guilt.

In reviewing a trial court's ruling on a motion to suppress, we afford almost total deference to the trial court's determination of the historical facts that the record supports, especially when the trial court's findings turn on evaluating a witness's credibility and demeanor. *State v. Ross*, 32 S.W.3d 853, 856 (Tex.Crim.App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). We afford the same amount of deference to the trial court's ruling on "application of law to fact questions," also known as "mixed questions of law and fact," if resolving those ultimate questions turns on evaluating credibility and demeanor. *Ross*, 32 S.W.3d at 856; *Guzman*, 955 S.W.2d at 89. However, we review *de novo* questions of law and "mixed questions of law and fact" that do not turn on an evaluation of credibility and demeanor. *Ross*, 32 S.W.3d at 856; *Guzman*, 955 S.W.2d at 89.

In this case, the trial judge did not specify his reasons for denying the motion to suppress. Where, as here, no findings of fact are filed by the trial court, "we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record." *Ross*, 32 S.W.3d at 855. If the trial judge's ruling on a motion to suppress is correct on any theory of the law applicable to the case, we will sustain it. *State v. Avila*, 910 S.W.2d 505, 508 (Tex.App.—El Paso 1994, pet. ref'd).

The issue before us presents a mixed question of law and fact that does not turn on an evaluation of the credibility of the witnesses. *Guzman*, 955 S.W.2d at 89. We will, therefore, utilize a *de novo* standard of review. *See id.*

First, Villarreal contends his oral statements are not admissible under article 38.22 because he received improper warnings. TEX.CODE CRIM. PROC. ANN. art. 38.22 § 2(b) (Vernon 1979). Specifically, he contends the warnings he received were improper because the waiver he signed did not contain the statement that "I knowingly, voluntarily and intelligibly waived the rights described above before and during the making of this statement."

However, for oral statements, the waiver of *Miranda* rights need not be express. *North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. *Id.* The waiver requirements are satisfied if, before making a statement, a defendant is advised of his rights and merely states that he understands them. *Etheridge v. State*, 903 S.W.2d 1, 17 (Tex.Crim.App. 1994). There is no requirement that the confession be preceded by an express statement from the accused that he affirmatively waives his rights. *Id.* at 16–18.

In the present case, the record demonstrates that Villarreal first communicated to Officer Vasquez that he waived his rights and subsequently initialed his name at the signature portion of the wavier form. Additionally, prior to further questioning, Officer Martinez administered the *Miranda* warnings to Villarreal. Again,

Villarreal advised Officer Martinez that he waived his rights. Thus, the record demonstrates Villarreal was properly warned, and did waive his rights.

Next, Villarreal claims the *Miranda* warnings were improper because the officer that gave him the warnings was not the same officer that took his statement. The record reflects that first Officer Vasquez read Villarreal his warnings in Spanish, and Villarreal then signed the waiver form. After receiving this first set of warnings and signing the waiver form, Villarreal was then taken to another room for questioning by Officer Martinez. However, before Officer Martinez took Villarreal's statement, he read the warnings to Villarreal again. Hence, the record reflects the officer that gave Villarreal his warnings was in fact the same officer that took Villarreal's statements. Additionally, the language in article 38.22, section 2(a), requiring warnings to be given by the person "to whom the statement is made" does not apply to oral statements, but applies only to written statements. *Dowthitt v. State*, 931 S.W.2d 244, 258 (Tex. Crim.App.1996). Thus, the taking of Villarreal's statement by Officer Martinez was proper.

Next, Villarreal asserts the trial court erred in denying his motion to suppress his oral statements because, prior to making the confession, the officers did not inform Villarreal that he had the right to contact the Mexican consulate pursuant to the Vienna Convention, and thus the officers violated article 38.23. Tex.Code Crim. Proc. Ann. art. 38.23 (Vernon Supp.2001). Article 38.23(a) provides that:

a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

*Id.* Villarreal contends that treaties fall within the meaning of "laws of the United States of America," and therefore, any evidence obtained in violation of the Vienna Convention Treaty is inadmissible. The Texas Court of Criminal Appeals has recently addressed the issue of whether a treaty falls within the meaning of "laws" for purposes of the exclusionary rule. In holding that it does not, Judge Keller, writing for a 5–4 majority, explained:

When used in a series, then, "laws" would appear to be distinct from treaties. On the other hand, "law," when used as an overarching concept, encompasses constitutions, laws, and treaties. Because "laws" and "Constitution" both appear in Article 38.23, the narrower meaning of laws, as being distinct from treaties, would appear to apply.

*Rocha v. State*, 16 S.W.3d 1, 30–31 (Tex. Crim.App.2000). As noted by Judge Holland, in her well-reasoned concurring opinion,[3] we find it impossible to reconcile the *Rocha* majority's holding that a treaty is not a "law" for article 38.23 purposes with U.S. Supreme Court case law expressly concluding that a treaty *is* the equivalent of a statute. *See id.* at 24 (Holland, J. concurring) (noting *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 10, 57 S.Ct. 100, 81 L.Ed. 5 (1936), holding that a treaty is to be treated as a statute in our

3. Judge Holland, joined by Judges Myers, Price, and Johnson, delivered an opinion concurring on all points except point of error five, which addresses whether article 38.23 is a permissible enforcement mechanism for vi-
olations of the Vienna Convention. Judge Holland concludes that it is. *Rocha v. State*, 16 S.W.3d 1, 22–30 (Tex.Crim.App.2000)(Holland, J., concurring).

courts if that treaty determines rights of private citizens).

We are, however, bound by the slim majority holding of the court of criminal appeals in *Rocha*. Accordingly, we must reject Villarreal's argument that violation of the Vienna Convention rendered his statement inadmissible.

Last, Villarreal contends the court erred in admitting his oral statement because the physical evidence obtained based on that statement was insufficient to conduce to establish his guilt. Generally, oral confessions are not admissible unless they meet the requirements of article 38.22. TEX.CODE CRIM. PROC. ANN. art. 38.22 (Vernon Supp.2001). Oral statements asserting facts or circumstances establishing the guilt of the accused are admissible if, at the time they were made, they contained assertions unknown by law enforcement but later corroborated. TEX.CODE CRIM. PROC. ANN. art. 38.22 § 3(c) (Vernon Supp.2001). Such oral statements need only circumstantially demonstrate the defendant's guilt. *Port v. State*, 791 S.W.2d 103, 106 (Tex.Crim.App.1990). Furthermore, if such an oral statement contains even a single assertion of fact found to be true and conducive to establishing the defendant's guilt, then the statement is admissible in its entirety. *Marini v. State*, 593 S.W.2d 709, 713 (Tex.Crim.App.1980).

Based upon Villarreal's statement, the police were later able to recover several pieces of evidence, including a cinder block from behind the garage, glass bottle fragments, carpet fibers from the truck of the car, and Villarreal's bloody shoes. Alex Madrigal from the Department of Public Safety crime laboratory confirmed the blood deposited on these items was that of Jorge Reyes, corroborating Villarreal's statement of how he murdered Reyes and what he used. Therefore, issue one is overruled.

### Issue Two

In issue two, Villarreal contends the trial court erred in admitting his oral statement made to the court during his arraignment. During the arraignment, while the judge was informing Villarreal of his rights, Villarreal abruptly stated that he had killed Reyes and that Isaias had only helped him put the body into the car's trunk. Villarreal contends the trial court erred in admitting this statement because it was in violation of his rights under *Miranda* and under article 38.22.

Article 38.22, section 3, applies to oral statements taken while the defendant is subject to custodial interrogation. Nothing in article 38.22 precludes the admission of a statement that does not stem from custodial interrogation. TEX.CODE CRIM. PROC. ANN. art. 38.22 § 5 (Vernon 1979). If either "custodial" or "interrogation" predicates are not met, then article 38.22 does not apply. *Little v. State*, 853 S.W.2d 179, 183 (Tex.App.—Corpus Christ 1993, no pet.). Interrogation includes speech or conduct by the police which the police should know is reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis*, 446 U.S. 291, 308, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). In the present case, Villarreal spontaneously stated he killed Reyes and that his friend, Isaias, only helped place Reyes's body into the trunk of the car. Although Villarreal was in custody, the record reflects this statement was not made in response to any interrogation, much less any police interrogation. Since Villarreal's statement was not the product of custodial interrogation, the admission of the statement into evidence did not violate *Miranda* or article 38.22. Issue two is overruled.

### Issue Three

Villarreal argues in his third issue that the trial court erred by exclud-

ing from the court's charge to the jury the following requested defensive instructions:

A. Self Defense

B. Apparent Danger-right to strike first

C. Apparent Danger-attack with deadly force

D. Oral Confession-deleting fruits of poisonous tree

■■■■ First, Villarreal alleges he was entitled to an instruction regarding self defense. When evidence from any source raises the issue of a lesser included offense or a defensive theory, it must be included in the charge. *Gibson v. State*, 726 S.W.2d 129, 132 (Tex.Crim.App.1987). The court is not required to charge the jury on an issue not raised by the evidence. *Carrillo v. State*, 591 S.W.2d 876, 890 (Tex.Crim. App.1979); *Segura v. State*, 850 S.W.2d 681, 687 (Tex.App.—Corpus Christi 1993, no pet.).

The use of force against another for self-defense is justified "when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." TEX. PEN.CODE ANN. § 9.31 (Vernon Supp.2001). The use of deadly force requires a showing that the use of deadly force is immediately necessary and a reasonable person in the actor's situation would not have retreated. TEX. PEN.CODE ANN. § 9.32 (Vernon Supp.2001).

■■■ In the present case, the record reflects Villarreal inflicted deadly force against Reyes after Reyes was unconscious. The evidence presented at trial established Reyes did not use any deadly force and did not have a weapon. Further, to claim self defense, the appellant must present evidence that his actions were immediately necessary to protect himself. *Warren v. State*, 764 S.W.2d 906, 909 (Tex. App.—Corpus Christi 1989, pet. ref'd).

After rendering Reyes unconscious, Villarreal went to the garage and returned with a screwdriver. There, Villarreal used the screwdriver to stab Reyes in the chest six or seven times. Therefore, the record reflects deadly force was clearly not immediately necessary, because sufficient time elapsed to allow Villarreal to leave the crime scene and then return to use deadly force on an unconscious victim. The facts do not raise the issue of self defense, hence Villarreal's assertion the trial court erred in denying an instruction on self defense is overruled.

■■■ Next, Villarreal contends the trial court erred in denying the defense's request for an instruction for apparent danger-right to strike first. Apparent danger is a facet of self defense. *Warren*, 764 S.W.2d at 909. Since Villarreal was not entitled to have an instruction on self-defense, he was not entitled to have an instruction on this specific type of self defense submitted. *Id.* This contention is overruled.

Third, Villarreal asserts the trial court erred in denying his request for a defensive jury charge instruction regarding apparent danger-the use of deadly force. Deadly force may only be used when a reasonable person would not have retreated, and when deadly force is reasonably necessary to protect against another's use or attempted use of unlawful deadly force. TEX. PEN.CODE ANN. § 9.32 (Vernon Supp. 2001). The record indicates, at the time Villarreal used the deadly force on Reyes, Reyes was unconscious and had been for several minutes. Thus, Reyes did not threaten Villarreal with the use of any unlawful deadly force. Therefore, this contention is overruled.

Last, Villarreal contends the trial court erred in denying his request to instruct the jury that if it found the oral confession

was obtained illegally, then it should not consider any evidence obtained from it. The actual jury charge contained the language regarding Villarreal's *Miranda* warnings:

> If, however, you find beyond a reasonable doubt that the aforementioned warnings were given the Defendant prior to his having made such statement, if he did make it, still, before you may consider such statement as evidence in this case, you must find from the evidence beyond a reasonable doubt that prior to making such oral statement, if he did the Defendant knowingly, intelligently and voluntarily waived the rights hereinbefore set out in the said warning, and unless you so find, or if you have a reasonable doubt thereof, you will not consider the oral statement or oral confession for any purpose whatsoever.

Villarreal complains the end of the instruction should have included the language, *"nor any evidence obtained as a result thereof"* in accord with article 38.22, section 6 of the Texas Code of Criminal Procedure.

 Article 38.22, section 7 provides, "When the issue is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement." The jury charge contains an incomplete instruction. "However, before the requested instruction is required, some evidence must be presented to the jury which raises the issue of voluntariness." *Butler v. State,* 872 S.W.2d 227, 236 (Tex.Crim.App.1994); *see also Brownlee v. State,* 944 S.W.2d 463, 467 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd). In the instant case, there is no dispute as to the facts surrounding Villarreal's statement. While Villarreal contested the voluntariness of his statement through a pre-trial motion to suppress, Villarreal produced no evidence to the jury

to indicate that his statement was involuntary. Accordingly, no jury instruction was required. Because we find that Villarreal was not entitled to the charge of which he complains, we further find that the trial court did not err in providing the jury with an incomplete instruction. Therefore, issue three is overruled.

### CONCLUSION

In conclusion, issues one, two and three are overruled. The judgment of the trial court is AFFIRMED.