

# NUMBER 13-07-322-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| RIGOBERTO SOLIS-REYES A/K/A EUGENIO SANDOVAL, | Appellant, |
| v. | |
| THE STATE OF TEXAS, | Appellee. |

### On appeal from the 214th District Court of Nueces County, Texas

# MEMORANDUM OPINION

**Before Justices Yañez, Rodriguez, and Vela**
**Memorandum Opinion by Justice Vela**

Appellant, Rigoberto Solis-Reyes, a.k.a. Eugenio Sandoval, was charged with two counts of aggravated sexual assault[1] and one count each of aggravated robbery,[2] burglary of a habitation,[3] and unauthorized use of a motor vehicle.[4] A jury found him guilty of all counts and assessed punishment at ninety-nine years in prison for each count of aggravated sexual assault, sixty years in prison for aggravated robbery, fifteen years in prison for burglary of a habitation, and ten months in state jail for unauthorized use of a motor vehicle, all of which the trial court ordered to run concurrently. On appeal, appellant complains that the trial court abused its discretion in admitting his video-recorded oral statement into evidence because he was not properly given his *Miranda*[5] warnings. We affirm.

## A. Background Facts

On July 24, 2005, 64-year-old D.S. was in bed at her Corpus Christi home when she awoke to see a man's arm raised above her. She then felt it hit her right cheek. She screamed, and the man repeatedly hit her on the face with his fist. When she tried to call 911, the man knocked the phone from her hand and beat her more severely. Using her bras, he tied her to the bedposts and unsuccessfully tried to vaginally penetrate her. After urinating on her face, he penetrated her both vaginally and anally. She could not see the man well because she was not wearing her glasses. She heard him speaking Spanish, as

---

[1] *See* TEX. PENAL CODE ANN. § 22.021 (Vernon 2003).

[2] *See* id. §§ 29.02, .03 (Vernon 2003).

[3] *See* id. § 30.02 (Vernon 2003).

[4] *See* id. § 31.07(a) (Vernon 2003).

[5] *Miranda v. Arizona*, 384 U.S. 486 (1966).

2

if he were having a conversation with another person.

During the attack, the man rummaged through her jewelry collection and took her purse and car keys. D.S. testified that after the attacker left, she waited until dawn to start calling out for help, but after a day passed without rescue, she concluded she would not be found alive.

D.S. was discovered about eighteen hours after the attack, after concerned friends, neighbors, and co-workers had not heard from her. After noticing that her car was missing, the police were called. Upon entering D.S.'s home, paramedics found her tied up "spread eagle" on her back, blindfolded, gagged, partly nude, bruised and swollen - especially in the face, hands, and feet. She was also weak and lethargic. It was determined that she had suffered a heart attack during the ordeal.

The same day the attack occurred, appellant showed up at the apartment of Maria Ramirez, wanting to buy crack cocaine. Ramirez testified that appellant had a television that he wanted to sell to get money to buy drugs. Ramirez and her daughter went with appellant in the car he was driving to the apartment of her ex-boyfriend, Walter Floyd. Ramirez and her daughter stayed in the car while appellant took the television into Floyd's apartment. Appellant then returned with cash. Back at her apartment, Ramirez "knew something wasn't right," so she looked in the glove compartment of the vehicle and found papers that identified a woman as the owner of the vehicle. At that time, police approached her. She identified appellant as being the person who had been driving the car. Ramirez also directed police to Floyd's apartment, where they recovered D.S.'s television.

Appellant was arrested and taken into custody. Officer R.L. Garcia, who was fluent in Spanish, testified that appellant did not speak English and that appellant told him that

3

he could read and write Spanish. Garcia then gave appellant a paper that contained *Miranda* warnings written in Spanish. Appellant read the warnings out loud in Spanish and placed his initials by the warnings. When asked to sign if he understood the warning, appellant signed the paper. He also circled the word "Si" (yes) at portions of the document when asked if he understood. Appellant then gave a video-taped statement, in which he admitted involvement in the burglary and unauthorized use of the vehicle. He blamed another person for the sexual assault.

DNA testing of the victim's fingernails and one of the bras identified a mixture of the victim's DNA and that of one other person, and that DNA was consistent with the DNA profile of appellant at a probability of 1 in 52,520 for an unrelated Hispanic.[6] Two other bras also had a mixture of the victim's DNA and one other person, but appellant was excluded in those samples. Another bra had a partial DNA mixture with DNA from the victim and at least two other people, with appellant's DNA consistent with one of them. Another bra had a mixture of the victim's DNA and DNA consistent with appellant's.

## B. Discussion

By his first and second issues, appellant argues that the trial court abused its discretion in admitting his video-recorded oral statement, in violation of his Fifth Amendment rights. *See* U.S. CONST. amend V. He also argues that the trial court abused its discretion in making its findings of fact and conclusions of law which reflected its ruling on the admissibility of the statement.

---

[6]Appellant's DNA was recovered from a blood sample to which he consented. Appellant challenged the issues of consent to the blood drawn at trial, but does not raise this issue on appeal.

Standard of Review

In reviewing the admissibility of an oral or written statement, we apply a bifurcated standard of review, affording almost total deference to the trial court's determination of historical facts that the record supports, especially when the fact findings are based on an evaluation of the witnesses' credibility and demeanor, and we review the court's application of the law to the facts de novo. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Here, the trial court made the following findings of fact and conclusions of law:

FINDINGS OF FACT

1. The Defendant, Rigoberto Solis-Reyes AKA Eugenio Sandoval can read and write in the Spanish language.

2. The Defendant, Rigoberto Solis-Reyes AKA Eugenio Sandoval read the Spanish Miranda warnings out loud in front of a Spanish speaking Police Officer.

3. The Defendant, Rigoberto Solis-Reyes AKA Eugenio Sandoval appeared to be intelligent enough to know what he was reading.

4. The Defendant, Rigoberto Solis-Reyes AKA Eugenio Sandoval understood what he was doing when he gave a statement to the police.

CONCLUSIONS OF LAW

1. The Defendant, Rigoberto Solis-Reyes AKA Eugenio Sandoval freely and voluntarily gave up those rights in the making of an oral statement.

2. There was substantial compliance with Article 38.22.

3. The Defendant, Rigoberto Solis-Reyes AKA Eugenio Sandoval impliedly waived his rights and agreed to speak with the officers and give an oral video-taped statement.

Appellant makes two basic arguments in support of his claim that the trial court

abused its discretion in denying his motion to suppress. First, appellant argues he did not receive the warnings required by *Miranda* and Texas Code of Criminal Procedure article 38.22 because the warnings were given to him in written form, which he read aloud, rather than the warnings being read aloud to him by the detective taking the statement. Second, he argues that he did not waive his rights because the written form did not contain an express waiver with his accompanying signature or initials memorializing that he knowingly, intelligently, and voluntarily gave up his rights.

### Was the officer required to read *Miranda* warnings and Article 38.22 warnings out loud?

Aside from *Miranda* and article 38.22, appellant cites no authority to support his claim that an officer must read the required warnings to a suspect. Neither *Miranda* nor article 38.22 specifically require that an officer read the required warnings out loud to a suspect. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 2005); *Miranda v. Arizona*, 384 U.S. 436 (1966). While *Miranda* requires that a suspect "be informed," "be clearly informed" and speaks of the necessity "to warn him," nowhere does it state that this must be done by an officer reading the warnings out loud to the suspect. *Miranda*, 384 U.S. at 467-73. Likewise, article 38.22, section 3(a)(2), which applies to oral statements, requires that an accused must "be given the [required] warning in Subsection(a) of Section 2 above,"[7] but does not specify how the warning must be given. *See* TEX. CODE CRIM. PROC.

---

[7]Texas Code of Criminal Procedure art. 38.22 § 3(a)(2) (Vernon 2005) states:

No written statement made by an accused as a result of custodial interrogation is admissible as evidence against him in any criminal proceeding unless it is shown on the face of the statement that:
(a) the accused, prior to making the statement, either received from a magistrate the warning provided in article 15.17 of this code or received from the person to whom the statement is made a warning that:
    (1) he has the right to remain silent and not make any statement at all and

6

ANN. art. 38.22, § 3(a)(2) (Vernon 2005).

The argument that *Miranda* warnings must be given orally was advanced in *Bell v. United States*, 382 F.2d 985 (9th Cir. 1967). In *Bell*, the Court rejected this argument, stating:

> there is no requirement as to the precise manner in which police communicate the required warnings to one suspected of crime. The requirement is that the police fully advise such a person of his rights, and appellant made no showing that he did not read or understand the written warnings which were given to him.

*Id.* at 987*; see Ex parte Bagley*, 509 S.W.2d 332, 337 (Tex. Crim. App. 1974) (citing *Bell* and noting that express written warnings satisfy the dictates of *Miranda*); *Fritts v. United States*, 395 F.2d 219, 220 (5th Cir. 1968) (holding that the defendant was adequately and sufficiently advised of his constitutional rights under *Miranda* when he was given a 4 x 5 card entitled "Your Rights," which listed his *Miranda* rights, though the Court suggested that it would have been a better practice to provide the rights in a larger type and on a larger card or piece of paper).

Here, the record reflects that appellant, who spoke only Spanish, was given his *Miranda* rights in a form written in Spanish. He told the Spanish-speaking police officer who gave him the warnings that he could read and write Spanish. Appellant read the warnings out loud in Spanish in front of the officer, and indicated that he understood the

---

that any statement he makes may be used against him at his trial;
(2) any statement he makes may be used as evidence against him in court;
(3) he has the right to have a lawyer present to advise him prior to and during any questioning;
(4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
(5) he has the right to terminate the interview at any time; and
(b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by subsection (a) of this section.

warnings. Appellant wrote his initials next to each warning in front of the officer. As appellant was unquestionably advised of all of his required rights in written form, which he clearly read, we conclude that the trial court did not abuse its discretion in denying the motion to suppress based on the argument that appellant was not read his *Miranda* warnings out loud by the officer administering the warnings.

## Must an express waiver of rights be in writing when dealing with an oral video-recorded statement?

Next, appellant argues that the trial court abused its discretion in admitting his statement into evidence because the waiver form he signed did not contain the statement that "I knowingly, voluntarily, and intelligibly waived the rights described above before and during the making of this statement." This argument was addressed and rejected by this Court in *Villareal v. State*, 61 S.W.3d 673, 679 (Tex. App.–Corpus Christi 2001, pet. ref'd). In *Villareal*, the appellant made the identical argument asserted in this case. *See Id.* This Court held:

> For oral statements, the waiver of *Miranda* rights need not be express. *North Carolina v. Butler*, 441 U.S. 369 (1979). The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in the *Miranda* case. *Id*. The waiver requirements are satisfied if, before making a statement, a defendant is advised of his rights and merely states that he understands them. *Etheridge v. State*, 903 S.W.2d 1, 17 (Tex. Crim. App. 1994). There is no requirement that the confession be preceded by an express statement from the accused that he affirmatively waives his rights. *Id*. at 16-18.

*Id*. Here, the record shows that appellant (1) received his warnings in written form, (2) read the warnings out loud, (3) indicated to the officer that he understood them, (3) initialed each warning, circled "Si" (yes) on the form where he was asked whether he understood his rights, and (4) signed his name when asked to sign his name, if he

8

understood his rights.  Thus, the record demonstrates that appellant was properly warned and that he waived his rights.  Accordingly, we conclude that the trial court did not abuse its discretion in denying appellant's motion to suppress.  Issues one and two are overruled. The trial court's judgment is affirmed.

ROSE VELA
Justice

_____

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this 24th day of April, 2008.