Affirmed and Memorandum Opinion
filed December 16, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-08-00835-CR

NO. 14-08-00848-CR



Joseph Lee Flores, Appellant 

v.

The State of
Texas, Appellee 



On Appeal from
the 434th District Court

Fort Bend County, Texas

Trial Court
Cause Nos. 44,556, 44,557



 

MEMORANDUM OPINION 

Appellant, Joseph Lee Flores, appeals from his
convictions for aggravated robbery and attempted capital murder of a peace
officer.  In three issues, appellant contends that the trial court erred in
overruling his motion to suppress a videotaped statement he made subsequent to
his arrest because (1) he did not intelligently and voluntarily waive his Miranda
rights prior to making the statement; (2) the State illegally induced his
statement by making improper promises; and (3) the statement included evidence
of appellant’s post-arrest silence.  We affirm.




 

BACKGROUND

            According to
numerous witnesses, on June 2, 2006, appellant engaged in a prolonged high
speed chase with police officers.  During the chase, appellant shot an officer
and stole a pickup truck at gunpoint after the first vehicle he was in broke
down.  After his arrest, appellant was taken to the Sugar Land, Texas police
station for questioning.  The questioning was videotaped, and the videotape was
played for the jury at trial over appellant’s objection.

Before trial, the trial court considered appellant’s
motion to suppress the videotape and heard testimony thereon.  However, other
than ruling that certain portions of the recording regarding appellant’s
criminal history should be redacted, the court carried the motion with the
trial.  At the pre-trial hearing, Detective Bart Grider, who conducted the
interview of appellant, testified that appellant had given his statement freely
and voluntarily.  Grider stated that appellant appeared lucid in his responses
and that nothing about appellant’s behavior lead Grider to believe that
appellant was overly tired, distracted, or suffering withdrawal.  According to
the detective, although appellant did not state that he wanted to talk to
Grider, appellant’s body language indicated that he was willing to talk to the
detective.  Grider further admitted that he did not ask appellant if he wanted
to talk with him.  Grider also explained that he did not raise his voice to
appellant, threaten him, or offer him a lesser charge if he cooperated.  

Prior to the admission of the redacted video, Grider
restated stated that he had not coerced, threatened, or offered any promises
regarding lesser charges in exchange for appellant’s cooperation.  The trial
court then admitted the video over appellant’s objections and granted him a
running objection to the admission of the video.

In the videotape, after Detective Grider had informed
appellant of his Miranda rights, Grider asked appellant if he understood his
rights.  After appellant clearly nodded his head up and down in response,
Grider began questioning him.  During the course of the approximately fifty-minute
interview, appellant appeared calm and, for the most part, intelligible and
responsive.  On a number of occasions, appellant paused before answering a
question or failed to answer a question before Grider began talking again.  The
vast majority of these lapses in the conversation were less than ten seconds in
duration.

At the beginning of the interview, Grider provided
appellant with water and briefly removed his handcuffs so that appellant could
move his hands from behind him to in front of him to drink the water. 
Appellant requested a cigarette several times during the interview.  Grider replied
that they would take a cigarette break after appellant answered some
questions.  Grider and appellant twice left the room for cigarette breaks
during the course of the interview and did not return to the interview room
after the second one.  At one point, appellant informed Grider that he had not
slept in four days; however, except for a few yawns, which increased in
frequency and duration toward the end of the interview, appellant did not
appear impaired in his capacity to converse with Grider.

During the interview, appellant neither confessed to
shooting the officer nor confessed to using a firearm in stealing the second
vehicle.  He did, however, acknowledge fleeing from police and taking the
vehicle, and he acknowledged that handguns were present in the vehicles.  Whenever
directly asked if he was responsible for any of the shooting, appellant
declined to answer, at one point responding only:  “What’s the next question?”

At the conclusion of his trial, a jury convicted
appellant of both offenses and assessed punishment at sixty years’ confinement
and a $10,000 fine for the aggravated robbery and life in prison and a $10,000
fine for the attempted capital murder.  Appellant timely filed notices of
appeal in both cases.  On the State’s motions, we abated these appeals for the
trial court to enter findings of fact and conclusions of law concerning the
voluntariness of appellant’s statement pursuant to article 38.22.   Tex. Code
Crim. Proc. art. 38.22, § 6.  

The trial court subsequently filed these findings and
conclusions, which provide in pertinent part:

·       
The Court finds that while being video-recorded the Defendant was
advised of his rights and given certain warnings that comported in all respects
with the constitution and law of the United States of America and the State of
Texas[.]

·       
The Court finds that after being so duly warned, the defendant
freely and voluntarily waived his rights and gave a video-recorded statement
which was inculpatory as to the said defendant.

·       
The Court further finds from viewing, in its totality, all the
circumstances surrounding the making of this statement, that the defendant, at
the time of giving his statement understood the rights of which he had been
advised, and further that the defendant knowingly and intelligently waived
these rights.  The totality of the circumstances includes, but is not limited
to:  the defendant’s apparent intelligence, his ability to articulate his
thoughts, the knowledge on the part of the defendant as to his right to counsel
as well as his right to continue or discontinue the interview as well as the
method and tone used by Detective Grider during the interview.

·       
The Court finds no credible evidence that the defendant was
coerced to give his statement.  The Court finds that the defendant chose to
answer questions on some topics and chose not to answer questions as to others.

.
. .

·       
The defendant did not appear to be under the influence of any
intoxicants or drugs, and appeared to have the normal use of his mental and physical
faculties.

·       
There is no evidence that the defendant was mentally impaired by
any medications, intoxicants or drugs that would have had an effect on the
voluntariness of his statement.

·       
Providing or withholding of cigarettes did not rise to the level
of any coercive conduct which would produce an involuntary and unreliable
statement, nor does it support a finding of an involuntary confession.

·       
The Court finds there is no evidence that the defendant was
suffering from sleep deprivation to the extent that he did not understand what
he was doing or that had an impact on the voluntariness of his statement.

·       
The Court finds that the defendant never invoked any of his
constitutional or statutory rights before, during or after giving his
statement.

.
. .

·       
The Court finds that the times where the defendant did not
respond orally or where there was a lull in the conversation could be
attributed to a  number of factors including but not limited to a desire to
think through what he wanted to say, rethinking his strategy, feeling guilty
about the crime and what happened to the officer, or considering the magnitude
of what had occurred and the degree to which he wanted to accept blame or place
it on the co-defendant, but this was not an invocation of his right to remain
silent that would require Detective Grider to cease any further questioning.

.
. .

·       
The Court finds Detective Grider’s testimony to be credible.

With these findings and
conclusions properly filed, we now address the merits of appellant’s issues
regarding his motion to suppress.

ANALYSIS

A.        Standard of
Review and Applicable Law

The trial court is the “sole and exclusive trier of
fact and judge of the credibility of witnesses” and evidence at a hearing on a
motion to suppress based on the voluntariness of a confession.  Delao v.
State, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007).  We give great deference
to the trial court’s decision to admit or exclude a confession and will reverse
only when the trial court flagrantly abuses its discretion.  Id.  

Article 38.21 of the Texas Code of Criminal Procedure
provides that the statements of a person accused of a crime “may be used in
evidence against him if it appears that the same was freely and voluntarily
made without compulsion or persuasion. . . .”  Tex. Code Crim.
Proc. art. 38.21.  To determine whether a confession was voluntarily made, we
examine the totality of the circumstances.  See Delao, 235 S.W.3d at
239. 

B.        Waiver of Rights

            In his first issue,
appellant contends that the trial court erred in overruling his motion to
suppress because he did not intelligently and voluntarily waive his Miranda
rights prior to making the videotaped statement.  Specifically, appellant
asserts that he made no affirmative waiver of his rights.  

The law does not require that a recording reflect an
express waiver of rights.  Rocha v. State, 16 S.W.3d 1, 12 (Tex. Crim.
App. 2000).  The waiver of Miranda rights, explicit or implicit, must be
proven by a preponderance of the evidence.  Joseph v. State, 309 S.W.3d
20, 24–25 (Tex. Crim. App. 2010).  In some cases, a waiver may be clearly
inferred from the actions and words of the suspect interrogated.  Id. at
25.  The waiver requirements are met if, before making a statement, a defendant
is advised of his rights and states that he understands them.  Villarreal v.
State, 61 S.W.3d 673, 678 (Tex. App.—Corpus Christi 2001, pet. ref’d) (citing
Etheridge v. State, 903 S.W.2d 1, 17 (Tex. Crim. App. 1994), superceded
by statute on other grounds as stated in Diaz v. State, 110
S.W.3d 181, 184 (Tex. App.—San Antonio 2003, pet. ref’d)).

Here, the trial court found that appellant “freely
and voluntarily waived his rights and gave a video-recorded statement” and that
he “did not appear to be under the influence of any intoxicants or drugs[.]” 
These findings are supported by the record.  As noted above, the videotape
shows that Detective Grider informed appellant of his Miranda rights and
asked him if he understood.  Appellant clearly nodded his head up and down
before Grider began questioning him, thus affirmatively indicating his
understanding.  Appellant then began to speak with Grider, choosing which
questions to answer.  Although appellant stated that he and his girlfriend had
been smoking crack cocaine before the police chase started, he did not indicate
that he was still under the influence of this intoxicant at the time of his
questioning.  Indeed, his decision to answer some questions and deflect others
supports the trial court’s finding that his waiver was knowingly and
intelligently made.  Further, Detective Grider testified that he did not
believe that appellant was under the influence of crack cocaine during
questioning.  As noted above, determining Detective Grider’s credibility is
solely the province of the trial court.  See Delao, 235 S.W.3d at 238.  

Under the totality of the circumstances presented
here, a valid waiver may be clearly inferred from the actions and words of
appellant.  Joseph, 309 S.W.3d at 25.  Accordingly, we conclude that the
trial court did not abuse its discretion in determining that appellant freely
and voluntarily waived his rights.  We overrule his first issue. 

C.        Inducement

In his second issue, appellant contends that the
trial court erred in overruling the motion to suppress because his statement
was induced by promises made by Detective Grider, specifically the promise of a
cigarette break after he answered certain questions.  Such argument goes to the
voluntariness of the statement.  As mentioned above, the trial court
specifically found that (a) appellant made his video-recorded statement freely
and voluntarily and (b) providing or withholding cigarettes did not rise to the
level of any coercive conduct that would produce an involuntary or unreliable
statement.  A promise made during a police interrogation may render a
confession involuntary if it was positive, made or sanctioned by someone with
apparent authority, was of some benefit to the defendant, and was of such a
character as would likely cause a person to speak untruthfully.  E.g.,
Garcia v. State, 919 S.W.2d 370, 388 (Tex. Crim. App. 1994) (en banc) (op.
on reh’g).  To determine if the alleged promise were likely to influence appellant
to speak untruthfully, we must consider whether the circumstances surrounding the
promise made appellant inclined to confess to a crime he did not commit.  Id.

Although appellant requested a cigarette several
times during the videotaped interview, Grider’s promise to let appellant have a
cigarette break was not the kind of promise that would typically be considered
as influencing a person to speak untruthfully.  See Muniz v. State, 851
S.W.2d 238, 254 (Tex. Crim. App. 1993) (en banc) (determining that promise to
contact charitable agencies to assist the defendant’s wife and mother was not
the sort of promise that would likely cause someone to confess to aggravated
rape and murder); cf. Roberts v. State, 545 S.W.2d 157, 161 (Tex. Crim. App.
1977) (“A threat made by police officers to arrest or punish a close relative
or a promise to free a relative of a prisoner in exchange for a confession may
render the prisoner’s subsequently made confession inadmissible in evidence.”). 
Here, appellant was charged with serious crimes; it is unlikely that he would
confess to such crimes for the sake of a single cigarette.  Certainly, the
trial court had discretion to find otherwise.  Further, although appellant
never answered the exact question that Grider tied to the grant of a cigarette
break—who was responsible for the shooting during the police chase—Grider nonetheless
granted appellant two cigarette breaks during the course of an approximately fifty
minute interview.

Grider’s promise neither rose to the level of
coercion nor rendered appellant’s confession involuntary.  We overrule
appellant’s second issue.

C.        Post-Arrest
Silence

            In his third issue,
appellant argues that the trial court erred in admitting his statement because
the statement constituted evidence of his post-arrest silence.  More
specifically, appellant points to the various pauses occurring during the
interview after he was asked questions, as well as his refusal to answer
certain questions, particularly as to whether he did any of the shooting during
the chase.  He asserts that by remaining silent in the face of questioning, he
implicitly invoked his right to silence.  

However, the United States Supreme Court and the
Court of Criminal Appeals have both determined that a defendant must
unambiguously invoke his right to silence.  See Berghuis v. Thompkins,
130 S.Ct. 2250, 2260 (2010) (“Thomkins did not say that he wanted to remain
silent or that he did not want to talk with the police. . . .  Here he did
neither, so he did not invoke his right to remain silent.” (citations omitted));
Dowthitt v. State, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996)
(explaining that an officer need not stop questioning a suspect unless the
suspect’s invocation of rights is unambiguous).  Because appellant did not
clearly and unambiguously invoke his right to silence, the trial court did not
abuse its discretion in denying his motion to suppress his statement.  We
overrule his third issue.

            We affirm the
trial court’s judgment.

 








                                                                                    

                                                                        /s/        Adele
Hedges

                                                                                    Chief
Justice

 

 

 

Panel consists of Chief Justice Hedges,
Justice Yates, and Senior Justice Mirabal.*

Do
Not Publish — Tex. R. App. P. 47.2(b).









* Senior Justice Margaret Garner Mirabal
sitting by assignment.