# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00689-CR

**Kenneth McMichael, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2016-623, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Kenneth McMichael was charged with aggravated robbery. *See* Tex. Penal Code §§ 29.02, .03. The indictment included two enhancement paragraphs alleging that McMichael was previously convicted of the felony offenses of attempted burglary of a habitation and possession of a controlled substance. *See id.* § 12.42. At the end of the guilt-or-innocence phase, the jury found McMichael guilty of the charged offense. McMichael elected to have the district court assess his punishment, and the district court found the enhancement allegations to be true and sentenced him to fifty-two years' imprisonment. On appeal, McMichael asserts that there was reversible error in the jury charge. We will affirm the district court's judgment of conviction.

## BACKGROUND

McMichael was charged with committing aggravated robbery at a tattoo parlor in New Braunfels, Texas. The indictment alleged that the following three individuals were also involved in the offense: Olanda Taylor, Robert Lionel Ruffins, and Anthony Ruffins. The

alleged victim in this case was Sarah Zamora, who worked at the tattoo parlor along with her husband Anthony Zamora.[1] At the time of the offense, Sarah and Anthony were in the shop along with their customer Tony Hernandez. During the guilt-or-innocence phase, the following witnesses testified: Sarah, Hernandez, Officer Richard Groff, and Officer John Mahoney. In addition, audio and visual recordings were admitted into evidence and played for the jury.

The first recordings were from security cameras located inside the tattoo shop. The footage from the recordings showed four men with masks on their faces entering the shop at night and carrying multiple handguns. Although their faces were covered on the recordings, law-enforcement officials testified at trial that they were able to link the individuals on the recordings to McMichael and the three other men listed in the indictment through various investigative methods, including tracking the location of the property that was stolen from the tattoo shop, reviewing the security footage for identifying features, and examining the social-media profile of one of the suspects to identify other potential suspects. Regarding McMichael, police officers testified that they were able to identify him through the methods discussed above, including observing on the recording a tattoo of a cross on his forearm that they were able to match to other known photos of him.

One recording showed one of the men kicking Sarah in the face before holding a gun to her head and then directing her to a cash register and to a safe. Another recording captured one of the men stomping on the back of Hernandez's head after he complied with the man's command to lie on the floor and showed several of the men repeatedly kicking Hernandez in the head, hitting him in the head with their pistols, and dragging him around the room. Regarding the individual later identified as McMichael, the recordings showed him carrying a

---

[1] Because Sarah and Anthony Zamora share the same surname, we will refer to them by their first names.

bag, grabbing a small safe located in the shop, holding one of the guns for some period of time, pointing the gun at Hernandez, and kicking Hernandez in the head.

In addition to the recordings discussed above, two other recordings were admitted into evidence and played for the jury. The State offered the first, which documented an interview of McMichael by New Braunfels police officers regarding this case. In the interview, one of the officers asked whether McMichael had been read his rights during a prior interview by another law-enforcement agency that occurred in the same room and ended a few minutes before the interview by the New Braunfels police officers began. McMichael confirmed that the officers from the prior interview read him his rights. In response to questioning by the New Braunfels police officers, McMichael admitted that he went into the tattoo shop with the three men mentioned above, that one of the owner's cousins encouraged them to rob the tattoo shop, that they planned to get cash from the cash register and from a safe that they had been told was in a closet, and that some of the other men assaulted Hernandez. In addition, McMichael admitted that still photos taken from the surveillance footage showed that he was one of the individuals present in the tattoo shop on the night in question.

The second recording was offered by McMichael and captured the prior interview discussed above in which members of the United States Marshals Task Force questioned McMichael about a crime that was unrelated to the robbery at issue in this case. In that interview, one of the officers read McMichael the statutory warnings contained in article 38.22 of the Code of Criminal Procedure, and McMichael stated that he understood those rights and then answered the officers' questions. When the officers finished their interview, McMichael was taken outside for a smoke break lasting approximately twelve minutes before he returned to the same room where the New Braunfels police officers interviewed him.

3

After both sides rested, the district court prepared a jury charge before both sides presented their closing arguments. Among other directives, the charge contained the following instructions:

> IV. No oral statement made by an accused as a result of custodial interrogation may be considered as evidence against him in any criminal proceeding unless the jury believes beyond a reasonable doubt that the statement was voluntarily made.
>
> In making the determination regarding "voluntariness," you are instructed that the law provides that:
>
>> (a) the accused, prior to making the statement, received from the person to whom the statement is made a warning that:
>>
>>> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>>>
>>> (2) any statement he makes may be used as evidence against him in court;
>>>
>>> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
>>>
>>> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>>>
>>> (5) he has the right to terminate the interview at any time; and
>>
>> (b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.
>
> Unless you find beyond a reasonable doubt that the Defendant's oral statement was voluntarily made, you are instructed that you shall not consider such statement for any purpose. If you do not find beyond a reasonable doubt that the Defendant's oral statement was voluntarily made, you are further instructed that you may not consider any evidence obtained as a result thereof against the Defendant for any purpose.

4

During deliberations, the jury submitted a question asking if "the Miranda Rights need to be read to a defendant for each interview of a law enforcement agent under the same arrest? If answer is yes, need to view" the recording of McMichael being questioned by the New Braunfels police officers. Following that request, the district court prepared a supplemental instruction that the district court stated would have been "appropriate for the original charge had it been included." Most of the supplemental instruction repeated directives from the jury charge, including directives explaining that the jury was the exclusive judge of the facts, that the jury was bound by the law given by the district court, and that the jury could not consider McMichael's statement to the police unless they first determined beyond a reasonable doubt that the statement was voluntarily given. In addition, the supplemental instruction contained the following new directives:

> Article 38.22 of the Texas Code of Criminal Procedure, Section 7 instructs that: "When the issue [of voluntariness of a statement] is raised by the evidence, the trial judge shall appropriately instruct the jury, generally, on the law pertaining to such statement."
>
> In Section IV. of the CHARGE OF THE COURT, you were instructed, generally, on the law pertaining to factors you may consider regarding your determination of the voluntariness of any such statement.
>
> Generally, a voluntary statement is one that is the product of a free and deliberate choice rather than intimidation, coercion, or deception. As well, waiver of one's privilege against self-incrimination must be made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances reveals, beyond a reasonable doubt, both an un-coerced choice and a sufficient level of comprehension may a statement be determined to be voluntary.

McMichael objected to the submission of the supplemental jury instruction, but the district court overruled the objection. After finishing their deliberations, the jury found McMichael guilty. McMichael appeals the district court's judgment of conviction.

**DISCUSSION**

In his issue on appeal, McMichael asserts that the district "court's supplemental jury instruction constitutes reversible error." *See Daniell v. State*, 848 S.W.2d 145, 147 (Tex. Crim. App. 1993) (explaining that if "trial judge responds substantively to a jury question during deliberations, that communication essentially amounts to an additional or supplemental jury instruction"); *see also* Tex. Code Crim. Proc. art. 36.16 (allowing additional jury instructions to be given at "the request of the jury"). When asserting that there was jury-charge error in this case, McMichael presents several sets of arguments regarding the supplemental instruction.

In his first set of arguments, McMichael contends that the district court's supplemental instruction does not comply with article 38.22 of the Code of Criminal Procedure. Specifically, McMichael notes that article 38.22 provides that if the evidence raises a question about the voluntariness of a statement by an accused, "the trial judge shall appropriately instruct the jury, *generally*, on the law pertaining to such statement." *See* Tex. Code Crim. Proc. art. 38.22, § 7 (emphasis added); *see also Moon v. State*, 607 S.W.2d 569, 572 (Tex. Crim. App. 1980) (explaining that sections six and seven both "only speak to the issue of voluntariness"). In light of this statutory language, McMichael contends that the original instruction in the jury charge pertaining to the voluntariness of his oral statement was the "general" instruction contemplated by article 38.22 and that the supplemental instruction is a specific instruction that was not authorized by the statute.

As support, McMichael points to *Mendoza v. State*, in which the Court of Criminal Appeals upheld the trial court's decision not to include in the charge three of the four instructions on voluntariness submitted by the defendant. *See* 88 S.W.3d 236, 237-38 (Tex. Crim. App. 2002). When discussing the propriety of the exclusion of the first two instructions in

6

*Mendoza*, the court explained that they "recited specific facts and called attention to a specific piece of evidence" and, therefore, could be considered improper "comment[s] on the weight of the evidence." *Id.* at 240.

We do not believe that the analysis from *Mendoza* compels a conclusion that the supplemental instruction here was erroneous. As an initial matter, we note that the Court of Criminal Appeals in *Mendoza* concluded that the trial court properly included the defendant's first instruction on voluntariness, which listed the requirements from article 38.22 but also included language similar to the portion of the supplemental instruction at issue in this case. *See id.* at 237 n.1, 240. In particular, the first instruction from *Mendoza* stated the jury could not consider the statement by the accused "unless you believe from the evidence beyond a reasonable doubt that the alleged confession or statement introduced into evidence was freely and voluntarily made by the defendant without compulsion or persuasion, or if you have a reasonable doubt thereof, you shall not consider such alleged statement or confession for any purpose nor any evidence obtained as a result thereof." *Id.* at 237 n.1.

More importantly, we note that unlike the instruction in *Mendoza*, the supplemental instruction in this case did not ask the jury to consider any specific fact pattern or pieces of evidence when assessing whether McMichael's statement was voluntarily made and instead provided general instructions to aid the jury in determining the voluntariness of the statement. *Cf. Oursbourn v. State*, 259 S.W.3d 159, 173-74 (Tex. Crim. App. 2008) (distinguishing general instructions available under sections 6 and 7 of article 38.22 from specific "fact-based" instructions under article 38.23 asking jury to first determine whether specific event occurred before deciding whether defendant's statement may be considered). Further, the supplemental charge addressed concerns outlined in article 38.21, which specifies that a suspect's statement

7

may only be used "if it appears that the same was freely and voluntarily made without compulsion or persuasion." *See* Tex. Code Crim. Proc. art. 38.21. The Court of Criminal Appeals has explained that the concerns set out in article 38.21 fall within the purview of section 6 of article 38.22. *Cf. Oursbourn*, 259 S.W.3d at 172. In addition, the language used in the supplemental instruction is a correct statement of the law. In fact, when preparing the supplemental instruction, the district court quoted language from a case by the Supreme Court that the Court of Criminal Appeals has also relied on. *See Leza v. State*, 351 S.W.3d 344, 349 (Tex. Crim. App. 2011) (quoting *Colorado v. Spring*, 479 U.S. 564, 573 (1987)); *see also Joseph v. State*, 309 S.W.3d 20, 25 (Tex. Crim. App. 2010) (relying on same language).

For these reasons, we reject McMichael's assertion that the supplemental instruction was an impermissibly specific instruction that did not comply with article 38.22 and instead conclude that the instruction was a general voluntariness instruction that the district court added in its discretion to provide additional assistance to the jury. *Cf. Mendoza*, 88 S.W.3d at 240 (noting that trial courts have discretion to determine "whether, in a given case, . . . additional guidance" beyond instructions found in article 38.22 should be given regarding when statement is voluntarily made); *Daniell*, 848 S.W.2d at 147 (noting that if instruction could have been given as part of original charge, it may be given as supplemental instruction).

In his next set of arguments, McMichael contends that even if the supplemental instruction was a general one as contemplated by article 38.22, the instruction was still erroneous because it "was an impermissible comment on the weight of the evidence effectively negating [his] defensive strategy." More specifically, McMichael urges that the original charge instructed the jury that when making a decision regarding the voluntariness of his statement, they were to consider whether "prior to making the statement" he "received from the person to whom the

8

statement is made" the statutory warnings set out in article 38.22. Further, McMichael points to the evidence on the recording demonstrating that none of the New Braunfels police officers read McMichael the article 38.22 warnings.

In light of the preceding, McMichael urges that the supplemental instruction "supplanted the language of the original charge that contained the very unambiguous statement that the 38.22 warnings must be given by the person who takes the statement," ordered the jury to assume that the requirement from 38.22 had been complied with, and made an improper comment on the weight of the evidence. In other words, McMichael insists that the supplemental instruction directed the jury "to disregard the original charge," to decide whether the statement was voluntary exclusively under the non-statutory definition in the supplemental instruction rather than the statutory directives from article 38.22, and to reject his "defensive theory that the New Braunfels Police should have read . . . the 38.22 warnings" before questioning him. Moreover, McMichael contends that the supplemental instruction contained "powerful words" like "intimidation, coercion, and deception" and that the inclusion of those words could have improperly "excite[d] the passion of the jury" and made the jury angry at him because there was no evidence "of any egregious conduct by law enforcement." *Cf. Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008) (stating that "[a]s a general rule, a trial court shall deliver to the jury a written charge distinctly setting forth the law applicable to the case; it should not express any opinion as to the weight of the evidence, sum up the testimony, discuss the facts, or use any argument in its charge calculated to arouse the sympathy or excite the passions of the jury").[2]

---

[2] The requirement regarding the need for a statement to be made to the person who provided the statutory warnings is found in section 2 of article 38.22. *See* Tex. Code Crim. Proc. art. 38.22, § 2. That provision applies to *written* statements, sets out the various *Miranda*-like statutory warnings that must have been read to an individual before his written statement may be admitted, and specifically states that before the statement can be admitted, "the accused, prior to

9

We disagree with McMichael's construction of the supplemental instruction. Nothing in the language of the additional instruction directed the jury to disregard the language of the original charge pertaining to the voluntariness of McMichael's statement. On the contrary, the supplemental instruction referenced the original charge and emphasized that the jury was to use the "factors" set out in the charge when making its "determination of the voluntariness of" McMichael's statement. Moreover, as set out above, the supplemental instruction addressed the voluntary requirements set out in article 38.21 requiring that a statement be "freely and voluntarily made without compulsion or persuasion," *see* Tex. Code Crim. Proc. art. 38.21, and used language similar to that endorsed by the Court of Criminal Appeals, *see Rocha v. State*, 16 S.W.3d 1, 20 (Tex. Crim. App. 2000) (noting that jury charge provided instruction that "[a] statement of an accused may be used against him if it appears that the same was freely and voluntarily made without compulsion or persuasion" and that instruction tracked language of statute); *see also Roberson v. State*, 113 S.W.3d 381, 385 (Tex. App.—Fort Worth 2003, pet. ref'd) (determining that trial court did not err by preparing "supplemental charge that contained

---

making the statement," must have received those warnings "*from the person to whom the statement is made.*" *Id.* (emphasis added). For *oral* statements, section 3 of article 38.22 sets out the requirements that must have been met before those types of statements may be admitted. *See id.* art. 38.22, § 3. Although section 3 incorporates the requirement that the *warning* contemplated by section 2 be given, the Court of Criminal Appeals has expressly held "that the language in Article 38.22 § 2(a), requiring warnings to be given by the person 'to whom the statement is made,' does not apply to oral statements but applies only to written statements." *See Dowthitt v. State*, 931 S.W.2d 244, 258 (Tex. Crim. App. 1996); *see id.* (explaining that "[w]hile § 3 requires that the warnings contained in § 2(a) be given, it does not require that all provisions of § 2(a) be met"); *see also Villarreal v. State*, 61 S.W.3d 673, 679 (Tex. App.—Corpus Christi 2001, pet. ref'd) (explaining that portion of section 2 requiring that warnings be given by person ultimately receiving statement "does not apply to oral statements, but applies only to written statements"). Because the statement at issue was an oral recorded statement given to the police, the same-person requirement from section 2 did not apply to this case even though it was included in the jury charge. Accordingly, McMichael was given the benefit of an instruction and a defensive issue that he was not entitled to. However, given our ultimate resolution that the inclusion of the supplemental instruction did not constitute jury-charge error, we need not further address this issue.

10

a proper statement on the law of burglary" in response to jury note). Furthermore, we can see nothing in the general language of the supplemental instruction that persuades us that the words chosen could have improperly excited the passion of the jury against McMichael in the circumstances present here.

In his brief, McMichael refers to *Kirsch v. State*, 357 S.W.3d 645 (Tex. Crim. App. 2012), as support for his assertion that the supplemental instruction was an impermissible comment on the evidence. In that case, the Court of Criminal Appeals noted that a trial court's inclusion of a definition for an undefined statutory term "in a jury charge may constitute an improper comment on the weight of the evidence." *Id.* at 651. Further, the court concluded that the trial court's definition of the term "'operate' as 'to exert personal effort to cause the vehicle to function'" was error because the definition "impermissibly guided" the jury's "understanding of the term" rather than allowing the jury "to assign that term" its common meaning. *Id.* at 652. In addition, the court explained that "the definition emphasizes evidence tending to show 'personal effort' toward causing the vehicle to function over evidence that would tend to show 'merely preparatory attempts to start the motorcycle'" and, thereby, improperly focused "the jury on the type of evidence that would support a finding that appellant was operating his motorcycle." *Id.*

Although we recognize the concerns identified by the Court of Criminal Appeals in *Kirsch*, we do not believe that the supplemental instruction explaining that a statement is voluntary when it "is the product of free and deliberate choice rather than intimidation, coercion[,] or deception" and that a waiver of the right against self-incrimination is effective if it is "made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it" carried the same risk of improperly focusing the jury

11

on particular types of evidence to the exclusion of other evidence pertaining to whether McMichael's statement was voluntarily given as set out under article 38.22, in part, because the supplemental instructions reminded the jury to consider the article 38.22 factors listed in the original jury charge when deciding whether his statement was voluntary and whether the jury could consider it when deciding his guilt. *Cf. Bartlett v. State*, 270 S.W.3d 147, 149, 152, 154 (Tex. Crim. App. 2008) (determining that instruction to jury that State may introduce evidence "that defendant was offered and refused a breath test" and that jury could consider defendant's refusal to provide breath sample when "deciding the question of guilt or innocence" constituted "an improper comment on the weight of the evidence").

In his final set of arguments regarding the alleged jury-charge error, McMichael contends that the district court's supplemental instruction constituted jury-charge error because it did not specifically answer the jury's legal question. In particular McMichael notes that the jury asked whether the *Miranda* warnings "need to be read to a defendant for each interview of a law enforcement agent under the same arrest" and then asked to view the recording of McMichael's interview if the answer to its question was "yes." Because the district court's supplemental instruction did not mention the recording and because the recording was not delivered to the jury, McMichael contends that the district court made an improper comment on the weight of the evidence and essentially instructed the jury to disregard his defensive theory that the New Braunfels police officers were required to but did not read the article 38.22 warnings before questioning him.

However, as set out above, the supplemental instruction made no comment of any kind regarding the recording of McMichael's interview or on any other evidence presented at trial and did not answer the jury's question regarding whether *Miranda* warnings needed to be

provided by the New Braunfels police department before they questioned him. In essence, the district court instructed the jury to consider the law that had already been given to them in the original charge when making their determination along with the general directives on voluntary statements included in the supplemental instruction. Accordingly, we conclude that the district court's response did not constitute an improper comment on the weight of any evidence.

For all the reasons previously given, we conclude that the inclusion of the supplemental instruction did not constitute jury-charge error and, accordingly, overrule McMichael's issue on appeal. *See Price v. State*, 457 S.W.3d 437, 440 (Tex. Crim. App. 2015) (explaining that appellate courts need only address issue of harm if they first determine that there was error in jury charge).

## CONCLUSION

Having overruled McMichael's issue on appeal, we affirm the district court's judgment of conviction.

_____
Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed: August 29, 2019

Do Not Publish

13