ACCEPTED
05-14-00634-cr
FIFTH COURT OF APPEALS
DALLAS, TEXAS
12/29/2014 5:08:36 PM
LISA MATZ
CLERK

5th Court of Appeals
FILED: 12-30-2014
Lisa Matz, Clerk

In the Court of Appeals for the
Fifth District of Texas at Dallas

| | | |
|---|---|---|
| **SOLOMON HAILU SOLOMON,** | § | |
| Appellant | § | |
| | § | |
| v. | § | **No. 05-14-00634-CR** |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| Appellee | § | |

Appealed from Cause Number 001-859520-2013 in the County Court at Law No. 1 of Collin County, Texas, the Honorable Richard Mays, Judge Presiding by Assignment at the Suppression Hearing, and the Honorable Corinne Mason, Judge Presiding at Trial.

§ § §

*STATE'S BRIEF*

§ § §

*Oral argument is requested, but only if Appellant also requests oral argument.*

**GREG WILLIS**
Criminal District Attorney
Collin County, Texas

**JOHN R. ROLATER, JR.**
Assistant Criminal District Attorney
Chief of the Appellate Division

**ANDREA L. WESTERFELD**
Assistant Criminal District Attorney
2100 Bloomdale Rd., Suite 200
McKinney, Texas 75071
(972) 548-4323
FAX (214) 491-4860
State Bar No. 24042143
awesterfeld@co.collin.tx.us

**REBECCA CULPEPPER &
GEETA SINGLETARY**
Assistant Criminal District Attorneys

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

INDEX OF AUTHORITIES ........................................................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ............................................1

STATEMENT OF THE CASE ...............................................................................1

STATEMENT OF FACTS.......................................................................................1

SUMMARY OF THE STATE'S ARGUMENTS .................................................4

STATE'S REPLY TO APPELLANT'S FIRST ISSUE
(DENIAL OF MOTION TO SUPPRESS).............................................................5

The officer's initial approach to Appellant was a consensual encounter because he merely approached a parked car without blocking Appellant's access or indicating compliance was required. Additionally, the officer had reasonable suspicion to detain Appellant based on his violation of a city curfew by parking at a closed city park.

Standard of Review .......................................................................................5

Argument & Authorities .................................................................................6

I. The officer's approach was a consensual encounter ...................................6

II. The officer had reasonable suspicion that Appellant was violating a city ordinance..............................................................................................11

STATE'S REPLY TO APPELLANT'S SECOND ISSUE
(PROSECUTOR STATEMENTS IN VOIR DIRE AND CLOSING
ARGUMENT) ...............................................................................................14

This issue should be dismissed as multifarious because it raises complaints regarding four separate factual events and at least four distinct legal complaints. Additionally, Appellant did not preserve

error on any of his complaints because he did not object and the complaints do not raise fundamental error. Finally, Appellant should not prevail on the merits. The prosecutor's comments during voir dire did not improperly shift the burden of proof or deprive Appellant of a jury verdict because they were merely an accurate statement of the law. The prosecutor's closing argument did not present herself as a witness or comment on the defendant's failure to testify because it was a summary of the evidence presented at trial. And any error in the comments was harmless.

Standard of Review ........................................................................14

Relevant Facts ...............................................................................15

    I. Voir dire .............................................................................15

    II. Closing argument .............................................................15

Argument & Authorities ................................................................16

    I. This issue should be dismissed as multifarious .........................16

    II. Appellant did not preserve his complaints for review ..............17

    III. The prosecutor's comments during voir dire were not improper ...........20

    IV. The prosecutor's closing argument was not improper ............22

PRAYER........................................................................................26

CERTIFICATE OF SERVICE........................................................27

CERTIFICATE OF COMPLIANCE ...............................................27

APPENDIX

# INDEX OF AUTHORITIES

**Statutes, Codes, and Rules**

TEX. R. APP. P. 33.1(a)(1) ..............................................................17

TEX. R. EVID. 204..........................................................................11

Code of Ordinances, City of Richardson, Texas, Sec. 15-61(18) ...........................11

**Cases**

*Archie v. State*,
  221 S.W.3d 695 (Tex. Crim. App. 2007) ...........................................14

*Barajas v. State*,
  93 S.W.3d 36 (Tex. Crim. App. 2002) ..............................................14

*Bustamante v. State*,
  48 S.W.3d 761 (Tex. Crim. App. 2001) .............................................24

*Carmouche v. State*,
  10 S.W.3d 323 (Tex. Crim. App. 2000) ...............................................5

*Crain v. State*,
  315 S.W.3d 43 (Tex. Crim. App. 2010) ..............................................7

*Cruz v. State*,
  877 S.W.2d 863 (Tex. App.—Beaumont 1994, pet. ref'd).................................18

*Draughon v. State*,
  831 S.W.2d 331 (Tex. Crim. App. 1992) ............................................18

*Edwards v. State*,
  No. 05-09-01496-CR, 2011 WL 3795696
  (Tex. App.—Dallas Aug. 29, 2011, no pet.)
  (not designated for publication) ............................................. 16, 17

*Espinosa v. State*,
  194 S.W.3d 703(Tex. App.—Houston [14th Dist.] 2006, no pet.) .....................18

*Gaddis v. State*,
   753 S.W.2d 396 (Tex. Crim. App. 1988) ...............................................................22

*Hawkins v. State*,
   135 S.W.3d 72 (Tex. Crim. App. 2004) .................................................................25

*Howard v. State*,
   932 S.W.2d 216 (Tex. App.—Texarkana 1996, pet. ref'd) .................................11

*Hunter v. State*,
   955 S.W.2d 102 (Tex. Crim. App. 1997) .............................................................6, 7

*Johnson v. State*,
   414 S.W.3d 184 (Tex. Crim. App. 2013) ................................................................8

*Johnson v. State*,
   68 S.W.3d 644 (Tex. Crim. App. 2002) ..................................................................5

*Johnson v. State*,
   912 S.W.2d 227 (Tex. Crim. App. 1995) .............................................................6, 8

*Kimbrell v. State*,
   No. 05-00-00156-CR, 2001 WL 46153
   (Tex. App.—Dallas May 3, 2001, pet. ref'd)
   (not designated for publication) ...........................................................................19

*Landrum v. State*,
   No. 05-90-01610-CR, 1993 WL 147034
   (Tex. App.—Dallas May 5, 1993, no pet.)
   (not designated for publication) ...........................................................................19

*Martinez v. State*,
   924 S.W.2d 693 (Tex. Crim. App. 1996) ..............................................................16

*Mathis v. State*,
   67 S.W.3d 918 (Tex. Crim. App. 2002) ................................................................19

*Milburn v. State*,
  973 S.W.2d 337(Tex. App.—Houston [14th Dist.] 1998, *rev'd on other grounds*,
  3 S.W.3d 918 (Tex. Crim. App. 1999)................................................................23

*Miller v. State*,
  330 S.W.2d 466 (Tex. Crim. App. 1959)...........................................................20

*Miller v. State*,
  393 S.W.3d 255 (Tex. Crim. App. 2012) .............................................................5

*Osbourn v. State*,
  92 S.W.3d 531 (Tex. Crim. App. 2002) .............................................................21

*Padrino v. State*,
  No. 05-05-01596-CR, 2007 WL 241159
  (Tex. App.—Dallas Jan. 30, 2007, no pet.)
  (not designated for publication) ........................................................................19

*Patrick v. State*,
  906 S.W.2d 481 (Tex. Crim. App. 1995) ...........................................................24

*Powell v. State*,
  63 S.W.3d 435 (Tex. Crim. App. 2001) .............................................................14

*Salazar v. State*,
  131 S.W.3d 210 (Tex. App.—Fort Worth 2004, pet. ref'd) ...............................19

*Saldano v. State*,
  70 S.W.3d 873, 886-87 (Tex. Crim. App. 2002) ................................................18

*Smith v. State*,
  721 S.W.2d 844 (Tex. Crim. App. 1986) ...........................................................19

*Smith v. State*,
  No. 2-04-261-CR, 2005 WL 1405812
  (Tex. App.—Fort Worth June 16, 2005, pet. ref'd)
  (not designated for publication) ........................................................................11

*State v. Garcia-Cantu*,
  253 S.W.3d 236 (Tex. Crim. App. 2008)................................................. 7, 8, 10

*State v. Perez*,
   85 S.W.3d 817 (Tex. Crim. App. 2002) ...............................................................6

*Sterling v. State*,
   800 S.W.2d 513 (Tex. Crim. App. 1990) ...........................................................16

*Terry v. Ohio,*
   392 U.S. 1 (1968) ...............................................................................................11

*Trevino v. State*,
   979 S.W.2d 78 (Tex. App.—Austin 1998, pet. ref'd) .........................................24

*Wesbrook v. State*,
   29 S.W.3d 103 (Tex. Crim. App. 2000) .............................................................22

*Young v. State*,
   137 S.W.3d 65 (Tex. Crim. App. 2004) .............................................................18

## STATEMENT REGARDING ORAL ARGUMENT

The State does not believe oral argument will assist the Court in developing the issues in this case. However, if oral argument is granted to Appellant, the State requests the opportunity to respond.

## STATEMENT OF THE CASE

Solomon Solomon ("Appellant") was charged by information with possession of under two ounces of marijuana and pleaded not guilty before a jury. CR 9; 3 RR 61. The jury convicted him, and the trial court sentenced Appellant to 12 months of community supervision and a $300 fine. CR 48, 50; 3 RR 141, 145.

## STATEMENT OF FACTS

Officer Brad Shackleford of the Richardson Police Department was on routine patrol in the early morning hours of July 28, 2013, when he noticed a single car parked at a city park. 2 RR 5-6. It was 2:23 a.m., and the city curfew for parks was 10:30 p.m. 2 RR 6, 8. The curfew was noted on a sign at the entrance to the park. 2 RR 16. The car was parked at an entrance to a trail, and in the officer's experience, "usually people are down there in that time of morning doing things that are illegal." 2 RR 8. So he pulled into the parking lot and parked to the side of the car, not blocking in the other car. 2 RR 10. Officer Shackleford specifically noted that the driver of the other car "could have backed out easily." 2 RR 10. The

1

video of the stop showed the officer's car parked perpendicular to Appellant's car, with no other cars in the area. SX 2.[1] The officer activated his spotlight as he turned into the parking lot. 2 RR 14.

As soon as he approached the car, Officer Shackleford noted the smell of marijuana and saw marijuana on the passenger—Appellant's—shirt and pants. 2 RR 10. The officer asked Appellant and the driver, identified only as "Ms. McLloyd," for their identification and told them, "Well, the park's kinda closed." 2 RR 9-10; SX 2 at 2:24:01-03. He returned to his car to run their identification, then came back and asked McLloyd to step out of the car. 2 RR 11. He told her that he smelled marijuana, and she admitted there was marijuana under the driver's seat. 2 RR 11. When he searched the car, Officer Shackleford found marijuana under the driver's seat plus a cigarette box with more marijuana and a pipe in the center console. 2 RR 11. McLloyd denied the marijuana in the console was hers, and Appellant was charged with its possession. 2 RR 12.

The trial court held a pre-trial hearing on Appellant's motion to suppress. 2 RR 1. In addition to the above testimony from Officer Shackleford, Appellant offered Defense Exhibit 1, a video of the park entrance he had taken the morning of the hearing, purporting to show that there was no sign marking the curfew. 2 RR

---

[1] The video was admitted as State's Exhibit 1 at the suppression hearing and State's Exhibit 2 at the trial. The State will cite to it here as State's Exhibit 2.

2

17, 23-24. The trial court denied the motion to suppress without making findings of fact and conclusions of law. CR 24; 2 RR 30.

At trial, Officer Shackleford again testified that he encountered Appellant as the passenger in a car parked "in the park" at Spring Creek Trail at approximately 2:30 in the morning. 3 RR 66-67. The "park curfew" in Richardson is 10:30 p.m. until 5:30 a.m. 3 RR 66-67. The park curfew was indicated at the entrance to the parking lot by a white sign with black lettering mounted on a pole. 3 RR 90-91. In the officer's experience, people parked at a closed park in the dark to "commit sexual acts, do drugs, etc." 3 RR 83. Officer Shackleford approached the car and immediately smelled the odor of marijuana and saw marijuana leaves on appellant's shirt and pants. 3 RR 68, 79. The driver admitted to having marijuana in the car, and upon searching it Officer Shackleford found the marijuana under the driver's seat that the driver claimed and marijuana in a cigarette box in the center console. 3 RR 69. Appellant and the driver were both arrested for possession of marijuana.

## SUMMARY OF THE STATE'S ARGUMENTS

*State's Reply to Appellant's First Issue:*

The officer's initial approach to Appellant was a consensual encounter because he merely approached a parked car without blocking Appellant's access or indicating compliance was required. Additionally, the officer had reasonable suspicion to detain Appellant based on his violation of a city curfew by parking at a closed city park.

*State's Reply to Appellant's Second Issue:*

This issue should be dismissed as multifarious because it raises complaints regarding four separate factual events and at least four distinct legal complaints. Additionally, Appellant did not preserve error on any of his complaints because he did not object and the complaints do not raise fundamental error. Finally, Appellant should not prevail on the merits. The prosecutor's comments during voir dire did not improperly shift the burden of proof or deprive Appellant of a jury verdict because they were merely an accurate statement of the law. The prosecutor's closing argument did not present herself as a witness or comment on the defendant's failure to testify because it was a summary of the evidence presented at trial. And any error in the comments was harmless.

4

## STATE'S REPLY TO APPELLANT'S FIRST ISSUE
(DENIAL OF MOTION TO SUPPRESS)

Appellant complains that the trial court improperly denied his motion to suppress the police stop because there was no reasonable suspicion to support his detention. But the officer's initial approach was a consensual encounter because he merely approached a parked car without blocking Appellant's access or indicating compliance was required. Additionally, the officer had reasonable suspicion to detain Appellant based on his violation of a city curfew by parking at a closed city park.

### *Standard of Review:*

A motion to suppress is reviewed with a bifurcated standard. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). Almost total deference is afforded to the trial court's determination of historical facts because the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* But whether a trial court properly applied the law to the facts is reviewed with deference only so far as it turns on an evaluation of credibility and demeanor, and mixed questions of law and fact are reviewed *de novo*. *Id.*

The evidence is considered in the light most favorable to the trial court's ruling. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). The trial court's ruling should be upheld so long as it is correct under any valid legal theory, regardless of whether the reason was argued before the court. *See Miller v. State,* 393 S.W.3d 255, 263 (Tex. Crim. App. 2012).

*Argument & Authorities:*

There are three categories of interactions between police officers and citizens: (1) encounters, (2) investigative detentions, and (3) arrests. *State v. Perez,* 85 S.W.3d 817, 819 (Tex. Crim. App. 2002). The trial court properly denied Appellant's motion to suppress because his interaction with Officer Shackleford was merely a consensual encounter not requiring justification, or alternatively because any detention was proper based on reasonable suspicion Appellant was violating a city curfew ordinance.

## I. The officer's approach was a consensual encounter

First, Officer Shackleford's interaction with Appellant was merely a consensual encounter. Unlike investigative detentions and arrests, encounters are consensual interactions that the citizen is free to terminate at any time. *Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995). Encounters do not, therefore, require the justification of either reasonable suspicion or probable cause. *Id.* "A police officer is just as free as any other citizen to stop and ask questions of a fellow citizen." *Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). Encounters are consensual until a reasonable person would believe he was not free to leave and has either yielded to the officer's show of authority or been physically forced to yield. *Johnson*, 912 S.W.2d at 236.

In the instant case, Officer Shackleford did not detain Appellant during their initial encounter. Generally the police are as free as anyone else to approach a parked car and ask for identification, so long as he does not convey that compliance is required. *State v. Garcia-Cantu,* 253 S.W.3d 236, 243 (Tex. Crim. App. 2008); *Hunter,* 955 S.W.2d at 104. Here, Officer Shackleford merely parked next to Appellant's parked car, approached, and spoke in a conversational voice. 2 RR 8-10; SX 2. Nothing in his demeanor or behavior would convey to a reasonable person that they were not free to leave. Thus, the interaction was a mere encounter.

Appellant primarily relies on two factors to argue the entire interaction was a detention—the use of a spotlight and the officer "parking in a manner which would require some maneuvering to leave." Appellant's Brief at 12. But the Court of Criminal Appeals has repeatedly noted that "while emergency lights are often involved in detention scenarios, spotlight use is often classified as necessary during police-citizen encounters and its use will not necessarily convert an encounter into an investigatory detention." *Crain v. State,* 315 S.W.3d 43, 50 (Tex. Crim. App. 2010), *citing Garcia-Cantu,* 253 S.W.3d at 236. Use of a spotlight is merely a factor to consider in the totality of the circumstances. *Id.* at 51. In *Crain*, it was only when the spotlight was combined with the command "come here and talk to me" that the encounter became a detention. *Id.* In *Garcia-Cantu*, the Court concluded that a detention occurred where the officer's car "boxed in" the

7

defendant's vehicle, preventing him from leaving, approached him in an "authoritative manner," and asked him, "What are you doing here?" in addition to merely shining a spotlight.[2] *Garcia-Cantu*, 253 S.W.3d at 246-47. And in *Johnson v. State,* the Court found that shining a spotlight "perhaps" could indicate a detention but was only "certainly" a detention when combined with the officer parking to block the defendant's vehicle. *Johnson v. State,* 414 S.W.3d 184, 193 (Tex. Crim. App. 2013).

Thus, the use of a spotlight here only would amount to a detention if combined with the officer blocking Appellant's vehicle. But he did not do so. Officer Shackleford testified that he parked "to the side" of Appellant's car and Appellant "could have backed out easily." 2 RR 10. Appellant argues that the officer's testimony could not be believed because the in-car video showed that he parked "roughly 70-80 degrees with the rear passenger-side of Appellant's vehicle" and Appellant could not have backed out without maneuvering around the officer's car. Appellant's Brief at 8-9. But the video shows the officer pulling up and parking perpendicular to Appellant's car. SX 2 at 2:23. There was ample room for Appellant's vehicle to back out and exit the parking lot, as Officer Shackleford testified. The trial court could reasonably determine, based on the video and the

---

[2] Additionally, *Garcia-Cantu* was a State's appeal. The Court specifically noted that the facts did not necessarily establish a detention and deferred to the trial court's fact-finding. *Garcia-Cantu*, 253 S.W.3d. at 248. It added, however, that had the trial court under the same facts ruled in favor of the State—as is the case in the instant case—it would have upheld the finding. *Id.* at 250.

8

officer's testimony, that Appellant's vehicle was not blocked and thus the mere use of the spotlight alone was not enough to amount to a detention.

Appellant also argues that Officer Shackleford blocked him from leaving by leaning on the side of his car to talk to him. Appellant's Brief at 9-10. But only the officer's initial approach is relevant to the consensual encounter analysis because Officer Shackleford saw marijuana leaves on Appellant's shirt and smelled the odor of marijuana as soon as he approached the car, giving him ample suspicion to detain Appellant further. 2 RR 10; 3 RR 68. Appellant claims that this cannot be considered because the State "failed to develop specifically when these observations were made." Appellant's Brief at 12 n.6. But the officer testified during the suppression hearing that the sight and odor of marijuana was his "first observation." 2 RR 10. At trial, he said this observation occurred "[i]mmediately as I approached the car." 3 RR 68. "First" and "immediate" both indicate primacy, that these observations occurred before any of the officer's other interactions. The trial court could justifiably conclude that the officer made these observations immediately as he arrived at the car and before any of his other actions, such as leaning on the car or talking to the two occupants. Indeed, noting a smell or leaves clearly scattered on a person's clothing are not things that would take much time to notice.

Appellant also argues that the interaction was a detention because the officer testified that they were not free to leave. Appellant's Brief at 10 n.5. During the trial, Officer Shackleford testified, "If you are asking if she was free to drive away as I approached, the answer is no based on a curfew violation, but consensual contact, yes, but once I smelled the marijuana that's all over." 3 RR 93. Thus, he testified both that the contact was consensual and non-consensual at the same time. This testimony was at the least confusing. But Officer Shackleford testified both before and after that statement that the encounter was consensual and Appellant and McLloyd were free to leave. 2 RR 8-9, 10; 3 RR 93. It was the trial court's task to resolve any conflict in the testimony. Regardless, the officer's subjective intent is irrelevant unless that intent was conveyed to the citizen. *Garcia-Cantu*, 253 S.W.3d at 244 n.41.

The mere use of a spotlight to illuminate a dark area does not amount to a detention. Because the use of a spotlight here was not combined with any other factors, such as blocking Appellant's vehicle, to prevent Appellant from leaving or communicating that his compliance was required, the initial interaction was a mere encounter that did not require any particular suspicion to justify. The trial court properly overruled Appellant's motion to suppress. His first issue should be overruled.

**II. The officer had reasonable suspicion that Appellant was violating a city ordinance**

Even if Officer Shackleford's interaction with Appellant arose to the level of a detention, it was nonetheless justified by reasonable suspicion he was violating a city curfew ordinance. An officer may temporarily detain a person he has reasonable suspicion of committing a crime. *Terry v. Ohio*, 392 U.S. 1, 19 (1968). The suspected violation of a city ordinance is sufficient to authorize an investigative detention. *Howard v. State,* 932 S.W.2d 216, 218-19 (Tex. App.—Texarkana 1996, pet. ref'd).

Here, Officer Shackleford testified that Appellant was parked at a city park in violation of a Richardson city ordinance setting a curfew of 10:30 p.m. 2 RR 6, 8; 3 RR 66-67. Richardson prohibits any person to "remain, stay, or loiter in any park between the hours of 10:30 p.m. and 5:00 a.m." Code of Ordinances, City of Richardson, Texas, Sec. 15-61(18).[3] Officer Shackleford's testimony that Appellant was parked in violation of a city ordinance is sufficient to support a detention. *See Howard,* 932 S.W.2d at 218-19; *Smith v. State,* No. 2-04-261-CR, 2005 WL 1405812, at *3 (Tex. App.—Fort Worth June 16, 2005, pet. ref'd) (not designated for publication) ("an officer's expressed belief that a person was violating a city ordinance is sufficient to justify an investigatory stop").

---

[3] A copy of the ordinance is attached as an appendix. A court may take judicial notice of any municipal ordinance on its own motion or upon the motion of either party. Tex. R. Evid. 204.

Appellant argues that the city ordinance could not provide reasonable suspicion for a detention because he "was in a parking lot when the officer detained him, not in a park" and the "record and law are both silent on whether a parking lot adjacent to a park falls under the definition of 'park'." Appellant's Brief at 12-13. But Officer Shackleford did not testify that Appellant was in "a parking lot adjacent to a park." He testified that he saw "a car parked at a park" and further explained he wanted to know "why [the car] was parked there in the park." 2 RR 6, 8. He also identified it as "the parking lot of that park." 2 RR 10. At trial, Officer Shackleford similarly testified that he saw "a car in the park" and that he "pulled into the park" next to it. 3 RR 66. Indeed, the city sign posting the park hours was located "at the entrance to the park," which was later clarified as "at the entrance of that parking lot." 3 RR 90. Thus, the testimony clearly established that the parking lot was not merely "adjacent" to the park as Appellant contends but rather part of the park.

Appellant also argues that "despite the officer's assertion to the contrary, there is no signage indicating the adjacent lot was closed," citing State's Exhibit 2 and Defense Exhibit 1. Appellant's Brief at 13. But the trial court was not required to credit Defense Exhibit 1, which only Appellant's testimony established as a video of the same lot and even Appellant admitted had been taken months after the offense occurred. 2 RR 17, 23-24. And State's Exhibit 2 does not show that no

12

such sign existed. Indeed, it shows a number of white signs on poles in the parking lot that match the officer's description, although none are legible from the angle of the video. Additionally, as the "street view" function Appellant cites to is merely a link to Google Maps, it is apparent that view is not a view as it existed at the moment of the stop. At the very least, it was taken at a different time of day, as the street view reflects daytime and Appellant was stopped at night. The trial court was free to credit the officer's testimony over this unclear and ambiguous evidence. Additionally, whether the sign was posted does not obviate the existence of a city ordinance setting a curfew for all parks. The city ordinance sets a curfew at all parks, not merely parks at which a sign is posted.

Because the officer had a reasonable suspicion that Appellant was violating the Richardson park curfew, he was justified in detaining Appellant. Thus, regardless of whether the interaction was an encounter or a detention, the trial court properly denied Appellant's motion to suppress. His first issue should, again, be overruled.

## STATE'S REPLY TO APPELLANT'S SECOND ISSUE
### (PROSECUTOR STATEMENTS IN VOIR DIRE AND CLOSING ARGUMENT)

In his second issue, Appellant complains that his Fifth and Sixth Amendment rights were violated by improper statements by the prosecutor in both voir dire and closing argument. This issue should be dismissed as multifarious because it raises complaints regarding four separate factual events and at least four distinct legal complaints. Additionally, Appellant did not preserve error on any of his complaints because he did not object and the complaints do not raise fundamental error.

Finally, Appellant should not prevail on the merits. The prosecutor's comments during voir dire did not improperly shift the burden of proof or deprive Appellant of a jury verdict because they were merely an accurate statement of the law. The prosecutor's closing argument did not present herself as a witness or comment on the defendant's failure to testify because it was a summary of the evidence presented at trial. And any error in the comments was harmless.

### *Standard of Review:*

The trial court has broad discretion over the process of selecting a jury. *Barajas v. State,* 93 S.W.3d 36, 38 (Tex. Crim. App. 2002). Accordingly, an appellate court reviews a trial court's rulings during voir dire for an abuse of discretion. *Id.* Similarly, an appellate court reviews for an abuse of discretion whether the trial court erred in overruling Appellant's objection to the State's closing argument. *See Archie v. State,* 221 S.W.3d 695, 699-700 (Tex. Crim. App. 2007). So long as the trial court's ruling falls within the "zone of reasonable disagreement," the appellate court should not intercede. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001).

*Relevant Facts:*

**I. Voir dire**

During voir dire, both the trial court and the prosecutor explained the concept of proof beyond a reasonable doubt and that the State must prove every element of the charged offense. 3 RR 14-15, 24-25. The prosecutor went on to discuss that the State was not required to have video footage of an offense or provide multiple witnesses to the offense. 3 RR 34. She then added:

> We also don't have to prove through a lab test that this [sub]stance has been tested and proven to be marijuana because marijuana is a substance with such a distinctive texture and smell that officers are trained to recognize it and we don't have to actually do tests on certain things.

3 RR 34.

A prospective juror added, "marijuana has a distinguishing texture that officers can reference and you can bring officers to testify." 3 RR 34. The prosecutor agreed, noting:

> I want to get into what we'll be bringing, but that's just sort of the way we allow these cases to proceed if there is an officer and we do have marijuana that alone is enough to prove that it's marijuana, and is that testimony saying I see it, I smelled it, I am trained to recognize it and it was X, Y or Z.

3 RR 35. Appellant did not raise an object to either of the prosecutor's statements.

**II. Closing argument**

At the conclusion of its final closing argument, the State told the jury:

[Y]ou have all of the proof you need today.

Now I want to remind you one more time that possession doesn't require ownership. And we talked about knowingly and intentionally, and that officer told you that it's a usable amount of marijuana. And we know it's this defendant, and we told you the date and told you where it happened, so you have got everything you need.

This is exactly the same thing as that child with the tape on its face. He had crumbs on his shirt.[4]

You know what happened that night, I know what happened and he knows what happened that night, and you see it on the video and you heard it from the officer and you have got everything you need, so we ask you to find this defendant guilty.

3 RR 140.

*Argument & Authorities:*

## I. This issue should be dismissed as multifarious

A multifarious issue is one that embraces more than one specific ground or that attacks several distinct and separate rulings of the court. *Sterling v. State,* 800 S.W.2d 513, 521 (Tex. Crim. App. 1990); *Edwards v. State,* No. 05-09-01496-CR, 2011 WL 3795696, at \*6 (Tex. App.—Dallas Aug. 29, 2011, no pet.) (not designated for publication). A multifarious point presents nothing for review and may be summarily dismissed. *Martinez v. State,* 924 S.W.2d 693, 698 (Tex. Crim. App. 1996); *Edwards,* 2011 WL 3795696, at \*6. In *Edwards*, this Court

---

[4] During voir dire, the prosecutor described circumstantial evidence as "You have the cake with the big piece missing, you've got crumbs maybe leading up to your kids feet, and you've got this. That's circumstantial evidence and you can consider that, and sometimes that's really helpful." 3 RR 37

particularly noted that an issue should be dismissed as multifarious where it attacked separate rulings of the trial court that "related to different objections and requests made by different parties, which are subject to different standards of review, harm analyses, and questions regarding waiver." *Edwards*, 2011 WL 3795696, at *6.

Here, Appellant's second issue raises a multitude of arguments, divided by Appellant into five subsections that each address multiple concerns. Appellant's Brief at 14-28. His complaint addresses four separate statements at trial, two in voir dire and two in closing arguments. He also identifies at least four distinct legal claims—relating to the right to a jury determination of guilt, the right to proof beyond a reasonable doubt, the right to remain silent, and the right to confront witnesses. Additionally, as none of the complained-of occurrences received an objection at trial, each requires a separate analysis in response to Appellant's claim they amount to fundamental error. As in *Edwards*, Appellant's complaints are so disjointed and touching on such a wide variety of factual and legal issues that they do not preserve any point for review. Accordingly, Appellant's second issue should be summarily dismissed as multifarious.

## II. Appellant did not preserve his complaints for review

To preserve error on the improper admission of evidence, the opponent must make a timely, specific objection at the earliest possible opportunity. Tex. R. App.

P. 33.1(a)(1); *Saldano v. State*, 70 S.W.3d 873, 886-87 (Tex. Crim. App. 2002). The purpose of requiring an objection is to give the trial court the opportunity to rule on the issue, as well as to give the proponent of the evidence an opportunity to correct the alleged error. *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). Without proper preservation, even constitutional errors may be waived. *Saldano*, 70 S.W.3d at 889. Here, Appellant raised no objection to any of the complained-of statements. 3 RR 34-35, 140. Accordingly, he did not preserve error for review.

Appellant argues that the issue raises fundamental error and need not be preserved for this court to review. Appellant's Brief at 17-19. Fundamental errors include only violations of waivable-only rights and denials of "absolute systemic requirements." *Saldano,* 70 S.W.3d at 888. Waivable-only rights include the rights to assistance of counsel and a trial by jury; systemic requirements include jurisdiction of the person and subject-matter. *Id.* But none of Appellant's complaints arise to the level of fundamental error. Courts have long recognized that complaints about a prosecutor's comments in voir dire require an objection to preserve error. *See, e.g., Draughon v. State,* 831 S.W.2d 331, 336 (Tex. Crim. App. 1992); *Espinosa v. State,* 194 S.W.3d 703, 708 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Cruz v. State,* 877 S.W.2d 863, 868 (Tex. App.—Beaumont 1994, pet. ref'd). Although Appellant argues the instant claim should be considered

18

fundamental because he argues that State misstated the burden of proof, this Court has previously held that even such a complaint is subject to the rules of error preservation. *Landrum v. State,* No. 05-90-01610-CR, 1993 WL 147034, at *2 (Tex. App.—Dallas May 5, 1993, no pet.) (not designated for publication). Appellant's voir dire complaints were not fundamental error and required an objection to preserve.

Similarly, Appellant's closing argument complaints were not fundamental error. Again, courts have generally required preservation for complaints of a prosecutor's closing argument. *Mathis v. State,* 67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002); *Padrino v. State,* No. 05-05-01596-CR, 2007 WL 241159, at *7 (Tex. App.—Dallas Jan. 30, 2007, no pet.) (not designated for publication). Indeed, in *Padrino,* this Court found a complaint that the prosecutor's argument injected her personal opinion about the case to require preservation. *Padrino,* 2007 WL 241159, at *7. And the courts have long applied traditional preservation requirements to comments on the defendant's silence. *See, e.g., Smith v. State,* 721 S.W.2d 844, 855 (Tex. Crim. App. 1986); *Salazar v. State,* 131 S.W.3d 210, 214-15 (Tex. App.—Fort Worth 2004, pet. ref'd); *Kimbrell v. State,* No. 05-00-00156-CR, 2001 WL 461531, at *2 & n.2 (Tex. App.—Dallas May 3, 2001, pet. ref'd) (not designated for publication). Thus, Appellant's closing arguments complaints likewise were not fundamental error.

Because Appellant did not object to any of the complained-of statements and such statements did not encompass fundamental error, he failed to preserve the issue for review. Appellant's second issue should be overruled.

## III. The prosecutor's comments during voir dire were not improper

Even if Appellant's complaints are considered, Appellant is nonetheless not entitled to relief. First, he raises two complaints regarding the prosecutor's statements during voir dire. He argues that the prosecutor's statements "We also don't have to prove through a lab test that this [sub]stance has been tested and proven to be marijuana" (3 RR 34) and "that's just sort of the way we allow these cases to proceed if there is an officer and we do have marijuana that alone is enough to prove that it's marijuana" (3 RR 35) were improper because it misstated the State's burden of proof and allowed the jury to believe that the State did not have to prove the substance Appellant possessed was, in fact, marijuana. Appellant's Brief at 21-23.

But the prosecutor's comments were an accurate statement of the law. The prosecutor never said that the State was not required to prove that the substance Appellant possessed was marijuana. Rather, she stated that no "lab test" was needed and an officer's testimony alone could prove the substance was marijuana. 3 RR 34-35. This has long been an accurate statement of the law. *See, e.g., Miller v. State,* 330 S.W.2d 466, 468 (Tex. Crim. App. 1959). Indeed, the Court of

Criminal Appeals has held that, "[u]nlike other drugs that may require chemical analysis, marihuana has a distinct appearance and odor that are familiar and easily recognizable to anyone who has encountered it." *Osbourn v. State,* 92 S.W.3d 531, 537-38 (Tex. Crim. App. 2002). The prosecutor's accurate statements of the law did not misstate the burden of proof and did not prevent the jury from making a fair determination of Appellant's guilt.

Further, any error was harmless. Earlier in voir dire, the trial court extensively discussed the burden of proof and informed the jury that "the burden of proof is always on the State" and "the State must prove each and every element of the offense charged." 3 RR 14-15. Likewise, the prosecutor explained that the State was required to prove seven elements in the case, including that the substance possessed was marijuana. 3 RR 24-25. The court's charge instructed the jury in the elements of the case, including that the substance possessed was marijuana, and it informed the jury that "the burden of proof is upon the State throughout the trial." CR 45-46. Most importantly, whether the substance was marijuana was never a contested issue throughout the trial. Rather, Appellant focused on whether the search was legal and whether he personally possessed the marijuana because it was in the center console of the car rather than on his person. Based on the totality of the evidence and the state of the law explained to the jury throughout the trial, any error in the complained-of statements did not influence the jury.

**IV. The prosecutor's closing argument was not improper**

Finally, the prosecutor's closing argument was not improper. Four generally accepted areas of jury argument are: (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to opposing counsel's argument; and (4) pleas for law enforcement. *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). Appellant argues that the prosecutor's phrase "I know what happened" suggested that she had conducted her own independent investigation into the case and the phrase "he knows what happened" was a comment on Appellant's failure to testify. Appellant's Brief at 23-27. But the prosecutor's argument must be reviewed within the context of the entire argument, not isolated phrases plucked out of context. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex. Crim. App. 1988) ("In examining challenges to jury argument, this Court considers the remark in the context in which it appears.").

Reviewed in context, the State's argument was simply a summation of the evidence. The prosecutor reviewed the evidence and discussed the elements of the case in turn, including reminding the jury about the definition of possession, how it could determine Appellant's mental state, and the officer's testimony that the substance was a usable quantity of marijuana. 3 RR 34. The conclusion "You know what happened that night, I know what happened and he knows what happened that night" was simply a rhetorical device to summarize the evidence and remark

22

that a guilty verdict was the obvious conclusion. Indeed, the prosecutor immediately followed these comments with "and you see it on the video and you heard it from the officer and you have got everything you need." 3 RR 140. This reference again to the evidence, including both testimony and the video, reinforced that the prosecutor was simply summarizing the evidence the jury had heard in the case.

In a similar case, the Fourteenth Court of Appeals held that a similar statement of "You know it and I know it" was a simple summary of the evidence rather than the prosecutor indicating he had conducted his own investigation into the case. *Milburn v. State,* 973 S.W.2d 337, 341-42 (Tex. App.—Houston [14th Dist.] 1998, *rev'd on other grounds,* 3 S.W.3d 918 (Tex. Crim. App. 1999). It noted that the prosecutor "never inferred to the jury that it should rely on his special expertise as a prosecutor, but instead, on common sense and on reasonable deductions from the evidence presented at trial." *Id.* Similarly, the prosecutor's statement here of "I know what happened" was a reference to the evidence presented at trial and did not in any way indicate that the prosecutor had conducted a personal investigation.

Nor would the jury necessarily conclude that the prosecutor's statement in context was a reference to the defendant's failure to testify. To determine whether a prosecutor's argument constitutes a comment on the failure of a defendant to

testify, the complained-of language is analyzed within the context in which it was made and must be viewed from the jury's standpoint. *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). The test is whether the complained-of language was manifestly intended or of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. *Id.* It is not enough that the language might be construed as an indirect or implied allusion to a defendant's failure to testify; the implication that the offending language made reference to the failure to testify must be a necessary one. *Patrick v. State*, 906 S.W.2d 481, 490-91 (Tex. Crim. App. 1995). Again, the prosecutor's comment was simply summarizing the evidence and would not necessarily be considered by a jury as a comment on Appellant's failure to testify.

Appellant argues the case is similar to *Trevino v. State,* where the Austin Court of Appeals determined that the prosecutor's argument "Two people were there that night that know what happened, Adolph Trevino and [the victim]" was a comment on the defendant's failure to testify. Appellant's Brief at 26-27, *citing Trevino v. State,* 979 S.W.2d 78, 79-80 (Tex. App.—Austin 1998, pet. ref'd). But the cases are not similar because the prosecutor here never identified Appellant as the only person who knew what happened. Rather, in the middle of summarizing all the evidence and explicitly referring to the video of the event, the prosecutor stated broadly that everyone in the courtroom—the jury, the prosecutor, and the

defendant—knew what happened. 3 RR 140. This would be understood by any reasonable jury as a simple rhetorical device indicating that the conclusion was obvious from the evidence. The statement did not comment on Appellant's failure to testify, and accordingly it was not improper.

Finally, even if the closing argument was improper, it was nonetheless harmless. The complained-of statement was a minor portion of the State's argument and at best mildly improper. Moreover, the statement was embedded in a valid argument properly summarizing the evidence before the jury. *See Hawkins v. State,* 135 S.W.3d 72, 83 & n.68 (Tex. Crim. App. 2004) (finding error harmless in part where impermissible comment was mild and the "main point of the comment was a valid one."). Any error would not have affected the jury, and accordingly it was harmless.

Appellant did not preserve his complaints, and the complained-of statements in both voir dire and closing argument were not in error. Appellant's second issue should be overruled.

## **PRAYER**

Appellant's trial was without prejudicial error. The State prays that Appellant's conviction and sentence be affirmed.

Respectfully submitted,

**GREG WILLIS**
Criminal District Attorney
Collin County, Texas

**JOHN R. ROLATER, JR.**
Assistant Criminal District Attorney
Chief of the Appellate Division

/s/ Andrea L. Westerfeld
**ANDREA L. WESTERFELD**
Assistant Criminal District Attorney
2100 Bloomdale Rd., Suite 200
McKinney, TX 75071
(972) 548-4323
FAX (214) 491-4860
State Bar No. 24042143
awesterfeld@co.collin.tx.us

## CERTIFICATE OF SERVICE

A true copy of the State's brief has been electronically served on counsel for Appellant, Kyle Therrian, and a courtesy copy sent to k.therrian@rosenthalwadas.com on this, the 29th day of December, 2014.

/s/ Andrea L. Westerfeld
Andrea L. Westerfeld

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limitations in Texas Rule of Appellate Procedure 9.4(i)(2). In reliance on the word count of the computer program used to prepare this brief, the undersigned attorney certifies that this brief contains 5,962 words, exclusive of the sections of the brief exempted by Rule 9.4(i)(1).

/s/ Andrea L. Westerfeld
Andrea L. Westerfeld

# **APPENDIX**

Richardson City Parks Ordinance

Code of Ordinances, City of Richardson, Texas, Sec. 15-61(18)

## Sec. 15-61. - Unlawful acts.

Within the limits of any city park, it shall be unlawful for any person to do any of the acts hereinafter specified, except as may be otherwise provided:

(1) To hitch, fasten, lead, drive, or let loose any animal, reptile, or fowl of any kind, provided that this shall not apply to dogs when led by a cord or chain, not more than six feet long.

(2) To ride or drive any horse or other animal, except in designated areas.

(3) To ride, drive, or go on any drive or street in any park at a speed greater than the posted speed limits, upon any bicycle, motorcycle, automobile, or any other vehicle whatsoever, or to ride or drive any such motorcycle, automobile, or other motorized vehicle upon any sidewalk, hike, or jogging trail or walk, except in designated areas.

(4) To carry or discharge any firearms, firecrackers, rockets, torpedoes, or any other fireworks, airguns, BB guns, bows and arrows, slingshots, paint-ball guns, or hit golf balls except in designated areas.

(5) To damage, move, alter, cut, break, injure, deface, or disturb any tree, shrub, plant, rock, building, cage, pen, monument, fence, bench, equipment, or other structure, apparatus or property, or to pluck, pull up, cut, take, or remove any shrub, bush, plant or flower, or to mark or write upon, paint, or deface in any manner, any building, monument, fence, bench, equipment or other structure.

(6) To cut or remove any wood, turf, grass, soil, rock, sand, gravel, or fertilizer.

(7) To swim, bathe, wade in, or pollute the water of any fountain, pond, lake, or stream.

(8) To make or kindle a fire except in picnic stoves, braziers, fire pits, or designated areas provided for that purpose.

(9) To wash dishes or to empty salt water or other waste liquids elsewhere than in sinks provided for such purposes.

(10) To place, abandon, or leave garbage, cans, bottles, papers, or other refuse in any park except in proper waste receptacles.

(11) To participate or engage in any activity in any park area when such activity will create a danger to the public or may be considered a public nuisance.

(12) To camp overnight.

(13) To possess or consume any alcoholic beverage.

(14) To disturb in any manner any picnic, meeting, service, concert, exercise, or exhibition.

(15) To distribute, post, place, or erect any advertising, handbill, circular, bill, notice, paper, or other advertising device.

(16) To sell or offer for sale any food, drinks, confections, merchandise, or services.

(17) To practice, carry on, conduct, or solicit for any trade, occupation, business, or profession or to circulate any petition of whatsoever kind or character.

(18) To remain, stay, or loiter in any park between the hours of 10:30 p.m. and 5:00 a.m. of the following day, or remain, stay, or loiter in any park except during the posted hours of operation, if posted as open other than 5:00 a.m. to 10:30 p.m. of the same day.

(19) For any person over the age of six years to use the restrooms and washrooms designated for the opposite sex.

(20) To place or dump any trash, refuse, solid waste, grass clippings, leaves, or other objectionable or unsightly matter in any park.

(21) To allow an animal to defecate in the park without immediate removal and disposal of such feces in proper waste receptacles.

(22) Seining minnows or fish from the creeks, ponds, and lakes in any park.

(23) To abandon, place, remove, or injure any animal including any living creature, domestic or wild, including but not limited to dogs, cats, cows, horses, birds, fish, mammals, reptiles, fowls, and livestock, except fishing in designated areas. Fishing by adults is restricted to catch and release.

(24) To use or operate any motorboat, boat, or watercraft on any creek, pond, lake, or water within any park.

(25) To conduct any activity which places a person in or on any creek, pond, lake, or water within the park.

(26) To use or operate any model airplane, boat, car, or other motorized model device, including radio-controlled devices; or helicopter, parasail, hang glider, or hot air balloon. Nonmotorized model sailboats are allowed.

(27) Use of mechanical loudspeakers or amplified music, sound, or voices.

(28) To conduct or participate in any tournament, camp, or organized sporting activity which has not been specifically authorized by the director or which conflicts with a scheduled activity or event authorized by the director.

(29) To operate a motor-assisted scooter, as defined by V.T.C.A., Transportation Code, § 551.301, as amended, any where within the limits of any park except on sidewalks, and on paths set aside for the exclusive operation of bicycles.

*(Code 1966, § 14-5(A); Ord. No. 3235-A, § 1, 7-12-99; Ord. No. 3465, § 2, 5-24-04)*